## William Lloyd Garrison, Jr., v. Charles H. Little et al.

1. PRACTICE—*When Propositions of Law May be Submitted.*—It is only where the parties are entitled to a trial by jury, and, waiving that right, submit the case for trial by the court, that Sec. 41 of the Practice Act gives the right to submit written propositions to be held as law in the decision of the case, and said section does not govern any case which must be tried by the court without the intervention of a jury, in the absence of agreement or consent by the parties.

2. CHARITABLE USES—*Validity of.*—The validity of charitable bequests, and the jurisdiction of equity in relation thereto, are not wholly dependent upon the statute of 43 Elizabeth, Chap. 4, but a charitable use, where neither law nor public policy forbids, may be applied to almost anything that tends to promote the well-doing and well-being of social man.

3. SAME—*Charities Defined.*—The court quotes approvingly the following definition of a charity : "Whatever is given for the love of God, or the love of your neighbor, in the catholic and universal sense—given from these motives and to these ends—free from the stain or taint of every consideration that is personal, private or selfish," is a charity.

4. SAME—*What is Charitable in the Legal Sense of the Word.*—It is well settled that any purpose is charitable in the legal sense of the word which is within the principle and reason of the statute of 43 Elizabeth, Chap. 4, although not expressly named in it.

5. SAME—*A Bequest for the Attainment of Woman Suffrage Valid.*— A bequest to trustees "to be used by them, according to their best judgment, for the attainment of woman suffrage in the United States of America and its territories," does not violate the policy of the law, and should be sustained as a valid charity.

6. SAME—*Effect of Death of Trustees—Jurisdiction of Chancery.*— If a bequest creates a charitable use of such a nature that a court of equity can supervise its administration, then the death of all or a part of the trustees does not cause a failure of the bequest, but in such a case, where trustees capable of taking the legal estate were originally appointed and the case thus brought within the jurisdiction of a court of chancery, that court will supply any defect which may arise in consequence of the death, disability or refusal of the trustees to act.

7. SAME—*Not Affected by the Rule Against Perpetuities.*—The rule against perpetuities does not apply to charitable bequests.

8. PERPETUITIES—*The Rule Does Not Apply to a Bequest to Trustees with Power to Expend.*—Where a bequest is made to trustees for the accomplishment of a particular object, and the trustees are given power to expend the fund, it can not be held that the bequest in any way violates the rule against perpetuities.

9. TRUSTS—*Enforcement of—Who May Put the Machinery of the Court in Operation.*—A bequest to trustees "for the attainment of Woman Suffrage in the United States of America and its Territories" can not be held void because no beneficiaries are designated who can enforce the execution of the trust, as the heirs, the testator, or any person interested in woman suffrage could put into operation the machinery of a court of equity to enforce the trust.

10. PUBLIC POLICY—*Advocating Changes in the Constitution Not Against Public Policy.*—The advocacy of a change of the Constitution in a proper way, and in the manner provided by that instrument itself, is not against public policy, and a bequest to be used in securing such a change may be sustained as a valid charity.

In Probate.—Appeal from the Circuit Court of Stephenson County; the Hon. JAMES S. BAUME, Judge, presiding. Heard in this court at the December term, 1897. Reversed and remanded with directions. Opinion filed May 23, 1898.

CATHARINE WAUGH McCULLOCH, attorney for appellant.

A bequest to two or more which would give them a joint tenancy, if all survived the testatrix, will not lapse by the death of one or more of the legatees before the death of the testatrix, if any one of the legatees survives, for survivorship is an incident of joint tenancy. 2 Redfield on Wills, *168 2 Williams on Executors, 505; 2 Jarman on Wills, Secs. 1115, 1117, 1129; Freeman on Co-tenancy and Partition, Secs. 28; 1 Schouler on Personal Property, Sec. 157 (3d Ed.); Schouler on Wills, Sec. 566; Tiffany and Bullard on Trusts and Trustees, 497, 559; Hill on Trustees, * 303 (4th Am. Ed.), n. 1; Wigram on Wills, Part II, 134, 417; Putnam v. Putnam, 4 Bradf. (N. Y.) 308; Tiedeman on Real Property, Sec. 885; 1 Roper on Legacies, 325, 330; 2 Kent's Com. *351 (7th Ed.); 11 Am. and Eng. Ency. of Law, 1062; 2 Pomeroy's Equity Jurisprudence, Sec. 1060; 1 Perry on Trusts, Sec. 343; Foster on Joint Ownership and Partition, 26; Webster v. Vandeventer, 6 Gray, 428.

" Where a bequest is made to two or more as joint tenants, and where the bequest is general they will take as such, and any one of the number survives the testator, there will be no lapse, although some of the joint devisees may die before testator, the share of deceased joint tenants going to the survivors." 2 Redfield on Wills, 168.

" If a legacy be given to two persons jointly, although one happen to die before the testator, such interest   *   *   * will survive to the other legatee." 2 Williams on Executors, 505.

" Where a legacy is given to two persons jointly, and one of them dies before testator, the share of decedent will not lapse but will survive to the other legatee." Tiffany and Bullard on Trusts and Trustees, 497.

" Where a bequest to two or more whose names are coupled together, fails as to one because of his death before the

will can take effect, there is no lapse of the bequest so long . as the other party remains at testator's death to take it by way of survivorship." 1 Schouler on Personal Property, *157.

"It follows as a consequence of the survivorship which is incidental to a joint tenancy that if the devise fail as to one of the devisees by reason of the decease of the devisee in the testator's lifetime, the other or others will take the whole." 2 Jarman on Wills, Sec. 1129.

"There can be no doubt as to the general doctrine that on the death of one joint tenant, either before the decease of the testator or after, * * * his share will survive to the other joint tenant." Putnam v. Putnam, 4 Bradford (N. Y.), 308.

"If a bequest be made to several and one or more die before the testator, then the surviving legatees will take the entire property." Freeman on Co-tenancy and Partition, Sec. 28.

"When donees take as joint tenants no lapse can occur unless the whole class becomes extinct during life of the testator, *aliter* if they take as tenants in common. The legal presumption is that donees take as joint tenants." Wigram on Wills, Part II, 417, 134.

"A devise to two or more persons simply, it has been long settled, makes the devisees joint tenants. Survivorship is incident to joint tenancy but not to tenancy in common." 2 Jarman on Wills, Sec. 1115.

"A bequest of chattels to a plurality of persons unaccompanied by any explanatory words confers a joint, not a several, interest. * * * The same rule is now established as to money legacies." 2 Jarman on Wills, Sec. 1117.

"When property is given upon trust to two or more trustees, they become joint owners. * * * and when one dies or resigns all the estate and powers remain in the survivor." Pomeroy's Eq. Jur., Sec. 1060.

Statutes abolishing survivorship do not apply to trustees or those holding for the benefit of others. Golder v. Bressler, 105 Ill. 434; Mette v. Feltgen, 148 Ill. 363; Freeman

on Co-tenancy and Partition, 43; 1 Perry on Trusts, Sec. 136 (3d Ed.); 1 Williams on Executors, 796, n.; 4 Kent's Com. 361 (7th Ed.); Hill on Trustees, 303 (4th Am. Ed.); 11 Am. & Eng. Ency. of Law, 1062, 1077; 13 Am. & Eng. Ency. of Law, 34; Appleton v. Boyd, 7 Mass. 131; 2 Redfield on Wills, *176 (par. 35).

"Some of the statutes enacted * * * for the purpose of abolishing joint tenancy or of robbing it of its grand incident of survivorship, except from their operation estates granted or devised to two or more as trustees. But independent of any express exception, it has been generally, but not universally, decided that these statutes do not apply to estates held in trust. * * * Because the mischiefs which these statutes were intended to avoid never worked as mischiefs but rather as advantages in connection with estates held by trustees, these estates are regarded as beyond the scope and intent, and therefore beyond the operation of the statutes, and are liable to descend to the survivor and in other respects be treated as at common law." Freeman on Co-tenancy and Partition, Sec. 43.

"Upon the death of one of several trustees, the whole trust estate devolves upon the survivor. This is true as to real property and personal, even where survivorship is abolished by statute." 1 Williams on Executors, 796, n.

In Illinois the rule has always been that where a bequest does not in terms imply a severance of the interest a surviving trustee will take all.

Our Supreme Court has said:

"It is clear that by the common law, and also by an express provision of the statutes, the estate of trustees is held in joint tenancy, and hence upon the death of one of several trustees nothing passes to his heir or personal representatives, but the whole estate devolves upon the survivors." Golder v. Bressler, 105 Ill. 434.

The rule against perpetuities does not apply to charitable bequests. As is shown later this is a charitable bequest. However, this bequest is valid and should be sustained whether or not the gift is charitable. Even if it were not

a charitable bequest, there is no violation of the rule against perpetuities. Anderson's Law Dict. 770; Waldo v. Cummings, 45 Ill. 421; Bouvier's Law Dict.; Gilbert's Uses by Sugd. 260 and note; Lewis on Perpetuities, 164; Robert v. Corning, 89 N. Y. 225; Gray on Rule against Perpetuities, 344–374.

This fund was not tied up for any period. These trustees were authorized to use this $8,000. They had absolute power over its disposal, and might expend it all within a short time. The fund is " to be used by them " (the trustees); that is, it is to be expended within the lifetime of the survivor of them. The rule against perpetuities does not apply to interests destructible by the one having the present vested interest. Hart v. Seymour, 147 Ill. 614.

" The mere creation of a trust does not, *ipso facto*, suspend the power of alienation; it is only suspended by such trust where a trust term is created, either expressly or by implication, during the existence of which a sale by the trustee would be in contravention of the trust. Where the trustee is empowered to sell, without restriction as to time, the power of alienation is not suspended, although the alienation is in fact postponed by the non-action of the trustee, or in consequence of a discretion reposed in him by the creator of the trust. * * * Where there are persons in being at the creation of an estate capable of conveying an immediate and absolute estate in fee in possession, there is no suspension of the power of alienation, and no question as to perpetuities can arise." Hart v. Seymour, 147 Ill. 614.

A bequest for " the attainment of woman suffrage in the United States of America and its Territories " is a charitable bequest.

The following are some of the approved definitions of charities:

" Charities had their origin in the great command to love thy neighbor as thyself. * * * A charity is a gift to a general public use, which extends to the poor as well as the rich." Perin v. Carey, 24 How. (U. S.) 465.

" Whatever is given for the love of God, or for the love of your neighbor, in the catholic and universal sense—given

from these motives and to these ends—free from the stain and taint of every consideration that is personal, private or selfish.  Ould v. Washington Hospital, 95 U. S. 303.

"Good will, benevolence, desire to add to the happiness or improvement of our fellow beings."  Donohugh's Appeal, 86 Pa. St. 312.

"A gift in trust for promoting the welfare of the community, of mankind at large."  Century Dictionary.

"A gift to a general public use, which extends to the rich as well as the poor."  Burrell's Law Dict.

"The word charity in its widest sense denotes all the good affections men ought to bear toward each other.  A charitable use, where neither law nor public policy forbids, may be applied to almost anything that tends to promote the well doing and well being of social man."  2 Perry on Trusts, Secs. 697, 687.

"A charity in a legal sense may be more fully defined as a gift, to be applied consistently with existing laws, for the benefit of an indefinite number of persons, either by bringing their hearts under the influence of education or religion by relieving their bodies from disease, suffering or constraint, by assisting them to establish themselves for life, or by erecting and maintaining public buildings or works, or otherwise lessening the burdens of government.  It is immaterial whether the purpose is called charitable in the gift itself, if it is so described as to show that it is charitable in its nature."  Jackson v. Phillips, 14 Allen, 556; Crerar v. Williams, 145 Ill. 643.

"The court is bound to carry the gift into effect, if it can see a general charitable intention."

"If the fair meaning of the words may include a legal as well as an illegal application, the gift will be upheld."  2 Perry on Trusts, Sec. 709.

HENRY C. HYDE, attorney for appellees.

MR. PRESIDING JUSTICE CRABTREE DELIVERED THE OPINION OF THE COURT.

On March 10, 1895, Eliza H. Church died at Freeport, in

said county of Stephenson, leaving a last will and testament, which was duly proven and admitted to record April 1, 1895; letters testamentary were issued thereon to Charles H. Little and Sarah C. Little, who were named as executors in the will and who are the appellees here.

The testatrix, by her will, disposed of a very considerable personal estate, and among other bequests and legacies, some of which were for charitable purposes, the thirteenth clause of the will provided as follows :

" 13.   I give and bequeath to Lucy Stone, wife of Henry B. Blackwell, Abey W. May, sister of Samuel May, of Leicester, Mass., Wm. Lloyd Garrison, Jr., son of Wm. Lloyd Garrison, deceased, all residing in Boston, Mass., or its suburbs, the sum of $8,000, to be used by them according to their best judgment for the attainment of woman suffrage in the United States of America and its Territories."

By the residuary clause in the will all the estate of the testatrix not otherwise disposed of was given to Sarah C. Little, one of the appellees herein.

It appears from the stipulation contained in the record that the testatrix left personal estate of the value of $40,881.18, which was amply sufficient to pay all debts, legacies and bequests, including that provided for in the thirteenth clause of the will.   Appellees proceeded to execute the will and advanced so far therein that on April 9, 1897, they presented to the County Court of said Stephenson County their so-called final report, showing a substantial compliance with all the provisions of the will, except distribution to the residuary legatee, and the payment of the $8,000 mentioned in the thirteenth clause of the will.   As to this last mentioned bequest the executors, in their report, make a statement as follows :   " That said Lucy Stone and Abey W. May, two of the three persons named in said thirteenth clause of said will to receive said bequest of $8,000, died before the death of the testatrix,   *   *   *   and that said bequest of $8,000 is lapsed and become a part of the residue of said estate, to be disposed of under the thirty-third clause of said will." The thirty-third clause of the will was the residuary clause above mentioned.

On July 3, 1897, appellant entered his appearance in the County Court and filed objections to the report of the executors, in which, while admitting the death of said Lucy Stone and Abey W. May as stated in said report, he insisted that he was the sole survivor of the persons named in the thirteenth clause of the will, and as such survivor was entitled to the whole of the bequest therein mentioned.

On a hearing in the County Court it was held that the bequest in controversy was inoperative and void, and an order was entered directing the executors to pay to Sarah C. Little, the residuary legatee. From that order appellant prosecuted his appeal to the Circuit Court, where, upon a hearing *de novo*, the same result was reached and a similar order entered.

Appellant brings the cause to this court and assigns many errors upon the record, all of which, however, center around the proposition as to whether or not the Circuit Court erred in holding the bequest contained in the thirteenth clause of the will lapsed, inoperative and void, and ordering the $8,000 therein mentioned paid over to the residuary legatee.

Many written propositions were submitted to the court to be held as the law of the case, and error is assigned upon the action of the court in holding and refusing the same. This assignment of error will not be considered. It was neither necessary nor proper to submit propositions of law in a case of this character. It is only where the parties are entitled to a trial by jury, and waiving that right submit the cause for trial by the court, that section 41 of the practice act gives the right to submit written propositions to be held as law in the decision of the case. This section does not govern any case which must be tried by the court without the intervention of a jury, in the absence of agreement or consent of the parties. Martin v. Martin, 170 Ill. 18. As this was not a case in which the parties would be entitled to a jury trial, it follows that the submission of written propositions to be held as the law of the case was improper, and no error can be assigned as to the action of the court thereon.

The real question for determination and to which we have given careful consideration is, was the bequest mentioned in the thirteenth clause of the will of such a character as to be upheld by a court of equity? And if the answer be in the affirmative, the further question is presented as to whether the legacy has lapsed by the death of two of the persons to whom it was given. The position of counsel for appellees as we understand it is, first, that the bequest is not one for charitable purposes within the classes enumerated in the statute of 43 Elizabeth, Chap. 4, which is in force in this State; second, that the death of two of the trustees prevents the exercise of the power by the survivor; third, that the bequest is unlimited in point of time as to its execution and therefore void; fourth, that the bequest is void because no beneficiaries are designated who could enforce the execution of the trust.

As to the first proposition, while it may be conceded the bequest in controversy does not fall strictly within the classes enumerated in the statute 43 Elizabeth, yet it by no means necessarily follows it may not be upheld as a charity. In the case of Ould v. Washington Hospital, 95 U. S. (5 Otto) 303, it is shown that the validity of charitable bequests and the jurisdiction of courts of equity in relation thereto, are not wholly dependent upon the statute above referred to. For while the statute only enumerates twenty-one distinct charities, yet in the early English statutes and decisions of courts, there were forty-six specifications of pious and charitable uses recognized as within the protection of the law, in which were embraced all that were enumerated in the statute of Elizabeth. And the court say that "a charitable use, where neither law nor public policy forbids, may be applied to almost anything that tends to promote the well doing and well being of social man." (Citing Perry on Trusts, Sec. 687.) The court also quote approvingly the following definition of a charity: "Whatever is given for the love of God or the love of your neighbor, in the catholic and universal sense—given from these motives and to these ends—free from the stain or taint of every consideration that is personal, private or selfish."

Viewing the bequest in question in this sense, why may it not be upheld as a charitable use ? Evidently the testatrix regarded the attainment of woman suffrage in the United States and its Territories with great favor, and believed it to be for the benefit of her sex. In this belief she was sustained by a large number of eminent men and women in this country. To such an extent has the agitation upon this subject been carried on, that in several States of the Union equal suffrage has been granted to both sexes, and in a number of others, including this State, the right of suffrage has been conferred in a limited degree. Whether the attainment of the elective franchise by women, to the extent enjoyed by men, would be as beneficial in its results to society as its friends hope or believe, is not a question for us to consider. Upon this subject there are widely divergent opinions; but if the cause was dear to the heart of the testatrix, we see no reason why she should not be permitted to devote a portion of her estate to its advancement. She believed it to be for the benefit of women, and for that purpose and because of her interest in their welfare and not from any selfish motive, she made the bequest in question.

Counsel for appellees has called our attention to the case of Jackson v. Phillips, 14 Allen, 539, as an authority directly in point upon the proposition under discussion.

In that case the testator, by the sixth and eighth clauses of his will, gave certain funds to Wendell Phillips, Lucy Stone, Henry Blackwell and Susan B. Anthony, to be expended by them at discretion "to secure the passage of laws granting women, married or unmarried, the right to vote, to hold office, to hold, manage, and devise property, and all other civil rights enjoyed by men."

It was held that the bequest was not for a charitable purpose, and the grounds of the decision appear to be, that as the object of the bequest was to effect a change in the existing laws, which object could not be carried out except by changing the Constitution, the bequest was invalid. A very brief portion of the lengthy opinion delivered by the court

in this case was devoted to the consideration of the sixth and eighth clauses of the will, while a long argument is made to uphold and sustain the fourth clause of the will, which made a bequest of $10,000 to William Lloyd Garrison, Wendell Phillips and others, named as trustees, to be expended by them " for the preparation and circulation of books, newspapers, the delivery of speeches, lectures, and such other means as, in their judgment, will create a public sentiment that will put an end to slavery in this country." This bequest was held to be a valid charity, as was also a bequest of $2,000 to the same trustees, " to be expended by them at their discretion, * * * for the benefit of fugitive slaves who may escape from the slaveholding States of this *infamous* Union from time to time." It is difficult to perceive why, under the laws which then existed as to slavery and fugitive slaves, the clauses last mentioned should have been held valid, and the one pertaining to woman suffrage held otherwise. Certainly there can be nothing against the policy of the law in allowing women to vote, inasmuch as the right has been granted in this State to the extent the Constitution permits, in the election of school officers, and the statutes conferring such privilege have been upheld by the Supreme Court. (Plummer v. Yost, 144 Ill. 68; Ackerman v. Haenck, 147 Ill. 514.) But even though a constitutional amendment be necessary before a complete right of suffrage may be conferred on women in this State, we see no reason for holding that the advocacy of a change of the organic law, in a proper way, and in the manner provided by that instrument itself, can be held as against public policy. In the evolution of the race new conditions arise which the earlier lawmakers could not anticipate nor foresee.

The thirteenth amendment to the Constitution of the United States was a radical change in the organic law, brought about by the growth and advancement of public sentiment on the slavery question, the agitation upon which subject had plunged the Nation into civil war. No such provision could have been incorporated into the Constitu-

tion as originally adopted, and yet the time came when the great majority of our people believed in it, and acquiesced in it, as a wise and just change in the law.

Who shall say what the future sentiment of the people may be as to woman suffrage? As we have already said, the question as to whether this movement in behalf of women is wise or unwise, is not one for our determination. The opinion of any individual member of this court, or of the whole court upon that subject, is not to govern in the decision of the question before us. If the bequest in controversy is for a charitable use, either within the classes enumerated in the statute 43 Elizabeth, or within the reason and principle of the statute, it must be upheld.

" It is well settled that any purpose is charitable in the legal sense of the word, which is within the principle and reason of this statute, although not expressly named in it; and many objects have been upheld as charities, which the statute neither mentions nor distinctly refers to." Jackson v. Phillips, *supra*. Numerous instances might be given in illustration of this doctrine, but we shall take time to refer only to a few.

In the case of Haines v. Allen, 78 Ind. 100, a bequest of $1,000 was made to certain trustees " to be put at interest, and the interest to be appropriated, annually, to the suppression of manufacturing, selling or using intoxicating liquors." And the bequest was upheld as a valid charitable trust. In delivering the opinion of the court Bicknell, J., says : " Preventing the use of intoxicating liquors, regarded as a means of promoting individual and social welfare, may be deemed a proper subject of charitable bequest, and whether the object shall be sought by the distribution of documents, or by lectures, or by other reasonable and appropriate means, is a matter within the discretion of the trustees."

In a recent English case, In re Foveaux, L. R. Ch. Div. Vol. 2 of 1895, 501, it was decided that a society having for its object the total abolition of the practice of vivisection, is a charity within the legal meaning of the word charity,

as being a lawful association formed with the intention of benefiting society, although the purpose of the bequest involved the repeal of an act of Parliament. And in the opinion it is said: "The purpose of these societies, whether they are right or wrong in the opinions they hold, is charitable in the legal sense of the term. The intention is to benefit the community; whether, if they achieved their object, the community would in fact be benefited, is a question on which I think the court is not required to express an opinion."

In the case of Hutchins's Ex'r v. George, 44 N. J. Eq. 124, the court had under consideration the validity of a bequest to Henry George, "in sacred trust for the express purpose of spreading the light on social and political liberty and justice in these United States of America, by means of the gratuitous, wise, efficient, and economically conducted distribution all over the land of said George's publications on the all-important land question and cognate subjects, including his Progress and Poverty, his replies to the criticisms thereon, his Problems of the Times, and any other of his books and pamphlets which he may think it wise and proper to gratuitously distribute in this country."

As is well known, these books of Mr. George contain arguments favoring the most radical changes in the laws relating to property, and denouncing the private ownership of land as robbery and a crime. The vice-chancellor refused to uphold this bequest as a charitable use, upon the ground that the courts ought not to give their aid and sanction to the distribution of literature which denounces as robbery, as a crime, an immense proportion of the judicial determinations of the higher courts protecting private ownership in land.

He said that had Mr. George confined himself to endeavoring by argument to make his readers believe in the expediency of abolishing private ownership in land, he would have sustained the gift as a charitable trust, though it were for the purpose of effecting a change in the existing laws, because, not to sustain it, would be aiming a blow at the liberty of speech and the freedom of discussion; and

in this respect he reached a far different conclusion from that arrived at in Jackson v. Phillips, 14 Allen, 539, which he commented on and discussed.

But when the case came before the Court of Errors and Appeals, the decree of the vice-chancellor was reversed and the bequest was sustained as a valid charitable trust. (George v. Braddock, 45 N. J. Eq. 757, 14 Am. State Rep. 754.) In the able opinion delivered by Beasley, C. J., it is shown that the grounds upon which the vice-chancellor placed his decision are clearly untenable. In speaking of the writings of Mr. George, then under consideration, the learned chief justice says: " What these writings are calculated, and were intended to effect, is to cause the repeal, in a legitimate mode, of the laws at present regulating the title to land and the substitution of a different system. It would seem to be quite out of the question for this court to declare that such an endeavor is opposed to the law, for it is simply a proposition to alter the law according to the law. The charitable uses created in this will must be sustained."

Here, then, we have three cases in which bequests have been sustained as charitable uses, although it is clear neither of them was within the classes enumerated by the statute of Elizabeth, yet they are upheld because they are within the principle and reason of the statute. We prefer to follow these cases rather than that of Jackson v. Phillips, *supra*.

Within the broad definition of a charity above given, we think the bequest in controversy in this case must be upheld and sustained as such.

As to the point that because two of the trustees named in the will are now deceased, the survivor has no power to act and is not entitled to the fund, we think the position untenable. Counsel for appellee concede that if the bequest creates a charitable use, of such a nature that a court of equity can supervise its administration, then the death of all, or a part of the trustees, would not cause a failure of the bequest. We have reached the conclusion that there is here such a charitable use, and the law is well settled that in such a case, where trustees capable of taking the legal

estate were originally appointed, and the case was thus brought within the jurisdiction of the court of chancery, that court will supply any defect which may arise in consequence of the death, or disability or refusal of the trustees to act. Haines v. Allen et al., 78 Ind. 100; Grimes' Ex'rs v. Harmon, 35 Ind. 198; 2 Story's Eq. Jur. (8th Ed.), 382, par. 1166.

As to the objection that the bequest is unlimited in point of time as to its execution and therefore void, it is a sufficient answer to say that the rule against perpetuities does not apply to charitable bequests. But we can not see that the bequest in controversy in any way violates the rule against perpetuities. The trustees were given the power, and it was evidently the intention of the testatrix, that they should expend the fund during their lives or that of the survivor of them. Certainly nothing in the will sought to tie up the fund for a longer period than the lives of the trustees then in being, and hence there was no violation of the rule against perpetuities.

The only remaining proposition is, that the bequest is void because there are no beneficiaries named who could enforce the execution of the trust.

We regard the position as unsound. The persons whom the testatrix intended to benefit, were undoubtedly the women of the United States and its Territories who do not now enjoy the right of suffrage.

This is a class of persons numerous and distinct. Should the trustee fail or neglect to apply the fund properly for the purposes designated in the bequest, the heirs of the testatrix, the residuary legatee, or any person interested in the cause of woman suffrage, could, in our opinion, put into operation the machinery of a court of equity to enforce the trust.

On a careful consideration of the whole case, we are satisfied that the order of the Circuit Court was erroneous and must be reversed with directions to enter an order that the bequest of $8,000 be paid to appellant.

Order reversed, and cause remanded with directions.