## Lewis's Estate.  Union Trust Company's Appeal.

[Marked to be reported.]

*Will—Charity to protect civil rights—Discretion to terminate trust.*

A trust to protect citizens of African descent in the enjoyment of their civil rights, and to prevent discrimination against them, is valid.

Testator by his will gave the residue of his estate to trustees, and directed that they should form a charitable corporation whose object should be " to protect, aid and secure to colored citizens or colored persons in the United States their civil rights as applicable to all other classes of American citizens, how and wherever the same may be denied one or more of them by reason of race, color or condition; with powers to employ all legal and moral means to destroy and prevent such discrimination, and give substantial aid in money or otherwise, within the discretion of the said corporation, to any person or persons who seek redress from such discrimination, and who shall satisfy the said corporation that he, she or they are entitled to such aid." Testator also directed that if the trust should become inoperative or impracticable by change of custom, process of law, or otherwise, the trustees should convey the trust estate to his heirs at law. *Held*, that the trust was valid.

Argued Jan. 12, 1892.  Appeal, No. 129, July T., 1892, by the Union Trust Co., guardian of Richard and Louisa Lewis, minor children of John D. Lewis, deceased, from decree of O. C. Phila. Co., April T., 1891, No. 164, dismissing exceptions to adjudication.  Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS, McCOLLUM, MITCHELL and DEAN, JJ.

Adjudication of account of William H. Brown et al., executors of John D. Lewis, deceased.

The facts of the case appear by the opinion of the Supreme Court.

The auditing judge, ASHMAN, J., awarded the residue of the estate to the trustees named in the will for the charitable trust therein created.  Exceptions to the adjudication were dismissed in an opinion by HANNA, P. J., 1 Dist. R. 423.

*Error assigned* was in not holding the gift void, etc.

*Sydney G. Fisher* and *Francis Rawle*, for appellant.—The civil rights act of March 1, 1875, which was passed to secure the very objects mentioned by the testator in his will, was declared unconstitutional in Civil Rights Cases, 109 U. S. Rep. 3, and Strauder v. West Va., 100 U. S. 303.  No valid charitable trust can be created to change or oppose existing laws, or

which is inconsistent with existing laws. It is hardly conceivable therefore that a trust could be valid which had for its object to overthrow a decision of the Supreme Court.

The trust could only be enforced in the Southern states by force of arms. A charitable trust cannot be created for the purpose of creating a revolution or interfering with the political conditions of another country: Habershon v. Vardon, 4 De G. & Sm. 467.

*Arthur Biddle*, with him *Frank M. Cody, Geo. W. Biddle, Henry Galbraith Ward, J. Rodman Paul* and *N. Dubois Miller*, for appellee.—It is no argument against the validity of a will to assert that its provisions are foolish and unwise: Cauffman v. Long, 82 Pa. 77; Eddey's Ap., 109 Pa. 421; Dean v. Negley, 41 Pa. 317. The trust was a valid one: British Museum v. White, 2 Sim. & St. 596; Cresson's Ap., 30 Pa. 450; Magill v. Brown, Brightly, 347; Jackson v. Phillips, 14 Allen, 556; Fire Ins. Patrol v. Boyd, 120 Pa. 644; Tatham v. Drummond, L. J. 34 Ch. 1; Marsh v. Means, 3 Jur., N. S. 790; Obert v. Barrow, 35 Ch. D. 472; Nightingale v. Goulburn, 5 Hare, 484; Newland v. Attorney General, 3 Meriv. 684; Mitford v. Reynolds, 1 Phillips Ch. 185; Witman v. Lex, 17 S. & R. 88; Manners v. Library Co., 93 Pa. 174.

OPINION BY MR. CHIEF JUSTICE PAXSON, January 23, 1893:

The testator in this case was a lawyer and made what the appellant regards as a foolish will. If we concede its contention in this respect, and we are by no means prepared to dispute it, it does not materially aid us in the decision of the case. Were we to set aside all provisions that we regard as unwise in the wills that come before us we would increase our duties to an uncomfortable extent. The testator was a colored man and appears to have had a deep regard for the comfort and welfare of his race. The peculiar nature of the provisions of his will may be due in part to this cause, together perhaps with the harmless vanity of perpetuating his name by the founding of what he regarded as a charity. He left a considerable estate and after giving his children an annuity of four hundred dollars, he provides as follows: "And, now, whereas it has been my lifelong experience and observation that much of the prosperity, enterprise and progressiveness of the colored race in

America has been injured by reason of prejudice and discrimination against them, I, therefore, direct my said executors to make due provisions for the payment of all the foregoing bequests, liens and indebtedness as soon as may be conveniently done by them from the said rents and income, or by a charge on the same.

" Item.—Then I bequeath all the rest, residue and remainder of my estate, real, personal and mixed, to my trustees hereinafter named, their heirs and assigns, in trust, for the following charitable uses, to wit : To promote, aid and protect citizens of the United States of African descent in the enjoyment of their civil rights, as provided by the first section of the Fourteenth Amendment to the Constitution of the United States and the Civil Rights Act of Congress based thereupon, and so also of the Fifteenth Amendment thereof ; and such as are publicly accorded all other classes of American citizens.

" Item.—With this desire I empower, authorize and direct the said trustees hereinafter named (and their successors) to form and charter a charitable corporation under the laws of Pennsylvania having its headquarters in the said city of Philadelphia, and to be named the Lewis Protective Bureau of Civil Rights, its object to be as aforesaid, to protect, aid and secure to colored citizens or colored persons in the United States their civil rights as applicable to all other classes of American citizens, how and wherever the same may be denied one or more of them by reason of race, color or condition ; with powers to employ all legal and moral means to destroy and prevent such discrimination, and to give substantial aid in money or otherwise, within the discretion of the said corporation, to any person or persons who seek redress from such discrimination, and who shall satisfy the said corporation that he, she or they are entitled to such aid. It is my desire that the executive work of this corporation be principally applied to the prevention of discrimination by the well-known persons and places, viz : Labor organizations, common carriers, hotels, business houses, schools, all places of moral amusement, cemeteries, and in defence of all other rights to which any respectable citizen is entitled by moral right."

These provisions are followed by certain others for the management of the corporation which it is not necessary to specify, after which occurs the following clause in his will : " In case

the said trust last named cannot be executed substantially as herein set out, or if at any time it should become inoperative or impracticable by change of custom, process of law, or otherwise, then my will is that my trustees hereinafter named, their heirs, executors, administrators or assigns, and their successors, shall grant, convey and assign in fee all the said rest, residue and remainder of my estate—bequeathed in the last-named trust to said charity—real, personal and mixed, whatsoever and wheresoever, to my heirs at law in such shares and proportion as they would be entitled to under the intestate laws of Pennsylvania."

This would seem to indicate that the testator had some doubt as to the practical or beneficial execution of the trusts in his will.  He accordingly authorizes his trustees, in the contingency referred to, to convey the trust estate to his heirs at law in such shares and proportions as they would be entitled to under the intestate laws.  It is quite possible that trustees may find the execution of this trust, if not impracticable, yet unproductive of any of the benefits to his race which the testator contemplated when he created the trust.  If so, they may see their way clear, under this clause of the will, to pass the estate over to the heirs.

This discretion, however, is vested in the trustees, and not in this court.  We cannot say as a matter of law that the objects of the trust are unlawful, or that some of them at least may not be carried out as the testator intended, whether they result in any actual benefit or not.  One of those objects manifestly is to remove the prejudice existing against the race, and to prevent discrimination against them, and to this end the trustees are empowered to employ all legal and moral means, and to give substantial aid in money, or otherwise, within the discretion of the said corporation, to any person or persons who seek redress from such discrimination.

Without expressing any opinion upon the wisdom of these provisions, or their practical benefit to the race to which the testator belonged, we are of opinion that this is a valid trust. It does not offend against any rule of public policy and the main object sought to be promoted is not only lawful, but commendable.

The decree is affirmed, and the appeal dismissed at the costs of the appellants.