**EDGETER, Plaintiff, v. KEMPER, Exr., Defendant.**

Probate Court, Montgomery County.

No. 126833.   Decided November 9, 1955.

300

Altick & McDaniel, for plaintiff.
Fred E. Hershey, for executor.
Hugh K. Martin, United States Atty., James E. Rambo, Asst. United States Atty.
C. William O'Neill, Atty Genl., Ralph Klapp, Asst. Atty. Genl.

## OPINION

By LOVE, J:

This matter is before the Court on a petition filed by Helen J. Edgeter for the construction of the will of George C. Edgeter, deceased, the intervening petition of the United States of America, the entries of appearance to said intervening petition, the answer and entry of appearance of the Attorney General of Ohio, the evidence, and briefs of counsel.

The petition filed on the 4th day of September, 1953, recites that the action is brought in accordance with the provisions of §10504-67 GC (§2107.46 R. C.), for the reason that the Executor was requested to bring said action and failed for more than thirty days to do so. Frank G Kemper, Executor of the estate of George C. Edegter, deceased, is named a defendant. Subsequently the United States of America, by direction of the Attorney General and authorization of the Secretary of Interior, filed a motion for leave to intervene which was granted; and the intervening petition was thereupon filed and service duly given or waived. Thereafter, at the suggestion of the Court and with the consent of counsel, the Attorney General of the State of Ohio was made a party defendant and filed an answer in the cause submitting himself to the jurisdiction of this Court.

George C. Edgeter died on the 21st day of December, 1950, leaving the Plaintiff, Helen J. Edgeter, his sister and his sole heir-at-law. In Items 5, 6, and 8 of his last will and testament the testator provided as follows:

"Item 5. I will devise and bequeath all of the remainder of my property both real and personal, wheresoever situate, to The United States of America for a permanent fund, the interest of said fund to be used for the relief of the various Tribes of Indigent American Indians of the United States of America. I suggest that the amount realized from my property, as herein provided, be invested in United States Government Securities.

"Item 6. In the event that the United States of America should refuse to accept my gift as herein provided, I direct and empower the Executor of this my will, to turn over the remainder of my property to a responsible Institution, preferably a National Bank, with an agreement

and instructions, that the remainder of my property as herein provided, will be invested in United States Government Bonds and the interest from said gift be applied for the sole benefit of indigent American Indians and as provided in Item 5.

"* * *

"Item 8. I will and direct that the sister Helen J. Edgeter, shall not receive one cent from my estate, on account of having made my life miserable for the past 25 years, interfering with my personal affairs and insisting on living in my house contrary to my wishes and therefore is not entitled to any consideration from me."

The Plaintiff by her petition and in her brief contends:

1. That the United States of America does not have the power to act as trustee under a trust such as the Testator attempted to create.

2. That the Court in exercising its sound discretion should refuse to appoint the United States of America as trustee.

3. That the trust attempted to be created by the Testator is inexpedient, impracticable, and invalid and, since the residue is otherwise undisposed of, it descends to the heir-at-law, Helen J. Edgeter.

4. That Tribes of indigent Indians named as beneficiaries under the will are non-existent.

5. That there is no general charitable intent in the will upon which can be based the doctrine of cy pres.

The United States of America, by its intervening petition, alleges that it has a legal right to accept and administer the gift set forth in Items 5 and 6 of said will and signifies its willingness to accept said gift. In a brief filed in support thereof the Government contends:

1. That the will creates an outright testamentary gift to the United States of an absolute fee of the residuary estate.

2. That in the event the Court determines that a trust exists, the United States of America has the power to act as a trustee.

3. That the Court in exercising its discretion should not refuse to appoint the United States of America as trustee and should relinquish its "investigative jurisdiction" as to said trust.

4. That if a trust exists, it is not impracticable, inexpedient, or uncertain in view of the use of said estate, the purpose to be accomplished, and the class to be benefited.

5. That the will of the testator evidences a general charitable intent and therefore the doctrine of cy pres is applicable.

The Attorney General of the State of Ohio in his brief contends:

1. That the testator devised and bequeathed his residuary estate to the United States of America in trust.

2. That the will creates a valid charitable trust for the benefit of indigent American Indians of the various tribes of the United States.

3. That the United States of America may act as a trustee under the powers of 25 U. S. C. 451 and administer said trust in accordance with the directions of the testator.

4. That in the event the United States of America may not act as a trustee, then an alternative trustee is provided in said will to carry out the direction of the testator.

5. That the trust created is not impossible, impracticable, or illegal and that in the event the trust cannot be carried out as stated, the doctrine of cy pres is applicable.

First, it is necessary to determine whether the testator intended to create a trust or whether he intended to make an unconditional gift to the United States of America free of a trust relationship.

In examining Items 5 and 6 of testator's will, it is to be noted that testator did not once use the terms "trust" or "trustee." In Item 6 he did use the words "my gift" in connection with the Government's refusal to accept it, but both Items must be closely scrutinized to discover what kind of legal relationship testator intended by the language he employed. He provided that the remainder of his property should be given to the United States of America to become a permanent fund, the interest from which should be used for the relief of various tribes of indigent American Indians of the United States of America, and then he made a precatory suggestion as to how the fund should be invested.

The fact that he did not use the formal and technical language usually used to, create a trust relationship, i. e., "trust," "trustees," "corpus," or other similar language, is not controlling. Scott on Trusts, Volume 1, Section 24, page 147, reads in part as follows:

"No particular form of words or conduct is necessary for the manifestation of intention to create a trust. It is possible to create a trust without using the word 'trust' or 'trustee.' Conversely, the mere fact that these words are used does not necessarily indicate an intention to create a trust.

"The question in each case is whether the settlor manifested an intention to create the kind of relationship which to lawyers is known as a trust. The question is whether the settlor manifested an intention to impose upon himself or upon a transferee of the property equitable duties to deal with the property for the benefit of another person."

See also Bogert, Trusts and Trustees, Volume 1, Section 45, pages 293, 294.

A trust is defined in Restatement, Trusts, Volume 1, Chapter 1, Section 2, page 6, as follows:

"A trust, as the term is used in the Restatement of this Subject, when not qualified by the word 'charitable,' 'resulting' or 'constructive,' is a fiduciary relationship with respect to property, subjecting the person by whom the property is held to equitable duties to deal with the property for the benefit of another person, which arises as a result of a manifestation of an intention to create it."

A fundamental essential of any trust is the separation of the legal estate from the equitable estate and the beneficial enjoyment. 54 Am. Jur., Trusts, Section 35, at pages 46 and 47; 10 Am. Jur., Charities, Section 4, at page 587.

The Court is of the opinion, therefore, that testator intended to create a trust.

Second, it is also necessary to determine whether the testator created a charitable or private trust. It seems obvious that this testator attempted to set up a gift which, if valid, would be for a charitable purpose. Gifts for the relief of poverty, for assistance to the aged, the

infirm, the poor, the indigent, and the afflicted are uniformly held to be charitable. 10 Am. Jur., Charities, Sections 5, 28 and 68; **Trustees McIntire Poor School v. Zanesville Canal & Mfg. Co., 9 Ohio 203 (1839); Palmer v. Oiler, Exrx., 102 Oh St 271, 272 (1921); Gearhart v. Richardson, 109 Oh St 418, 429 (1924).** Also see Restatement, Trusts, Vol. II, Sections 348 and 369; Scott on Trusts, Volume 3, Section 369, page 1976.

In Item 5 testator left his residuary estate "for the relief of the various Tribes of Indigent American Indians of the United States of America." In Item 6 he directed that the interest be applied "for the sole benefit of indigent American Indians and as provided in Item 5." "Indigent" has been defined in Webster's Unabridged New International Dictionary, Second Edition, as follows:

"1. Wanting; lacking; also, void; free; destitute.

"2. Destitute of property or means of comfortable subsistence; needy; poor; in want; necessitous."

In Restatement, Trusts, Volume 2, Section 348, page 1095, a charitable trust is defined as follows:

"A charitable trust is a fiduciary relationship with respect to property arising as a result of a manifestation of an intention to create it, and subjecting the person by whom the property is held to equitable duties to deal with the property for a charitable purpose."

In 10 Am. Jur., Charities, Section 4, page 587, charitable trust is defined as:

"Any trust coming within the definition of a legal charity for the benefit of an indefinite class of persons sufficiently designated to indicate the intention of the donor and constituting some portion or class of the public is a charitable trust."

Also see 10 Am. Jur., Charities, Sections 5, 9, and 10.

It is the opinion of this Court that testator intended to create a charitable trust.

Third, while testator may have intended to create a charitable trust, has he in fact created a valid charitable trust, having in mind the purpose for which the trust was created and the beneficiaries which were the ultimate objects of his bounty?

In analyzing the will, it must always be kept in mind that the legal principles applicable to charitable trusts differ in some respects from the legal principles applicable to private trusts. For example, gifts for charitable purposes have always been favored in equity and trusts created for such purposes are carried into effect upon liberal principles of equity jurisprudence under circumstances where a purely private trust might fail. Gearhart v. Richardson, supra, Syllabus 2. One of the characteristics of a charitable trust is the generality or indefiniteness of the beneficiaries. There cannot be a private trust unless there is a beneficiary who is definitely ascertainable at the creation of the trust or definitely ascertainable within the period of the rule against perpetuities. See Restatement, Trusts, Sections 112 and 364. On the other hand, a charitable trust can be created although there is no definite or definitely ascertainable beneficiary designated. Restatement, Trusts, Section 364. In fact, when the number of recipients becomes too limited, the character of the trust becomes less charitable. Restatement, Trusts, Section 375.

Furthermore, while the purposes of the trust may be charitable, a trust will not be upheld as charitable unless the accomplishment of the purposes of the trust is of benefit to the public at large. 10 Am. Jur., Charities, Section 5, page 588; Scott on Trusts, Volume III, Section 374.8, page 2012.

Perhaps no field in the law of trusts is so fruitful of litigation as that where an attack is made on the validity of the trust by those who contend that either the purpose or the beneficiaries are so uncertain and so vaguely defined that the trust is invalid.

According to the editors of Am. Jur., there are two views: (1) There are those who maintain that the instrument creating a charitable trust must point out both the purpose of the trust and the beneficiaries with the same certainty as would be required in an instrument creating a private trust. (2) The better view holds that it is sufficient if the instrument states the purposes of the charity in general terms and designates the beneficiaries who may enjoy the benefits as those of a certain designated class leaving to the trustee the duty of selecting the individuals of the class who will actually receive the benefits. 10 Am. Jur., Charities, Section 82, page 643.

An examination of the Ohio authorities hereinafter set forth leads this Court to believe that Ohio follows what the editors of American Jurisprudence call the better view. It would appear from the analysis of all authorities on the subject that with respect to certainty as to the beneficiaries, the instrument need go no further than reasonable certainty as to the class itself which may be great or small, particular or general, from which the trustee may select the persons to receive the benefits of testator's gift. The rule does not mean that the recipients of the gift must be pointed out. See 10 Am. Jur., Charities, Section 88. page 647. In this regard at Section 93 of 10 Am. Jur., Charities, it is pointed out that if the bequest is for the benefit of the poor as a class and the only thing remaining uncertain is the selection of the beneficiaries, it is not so uncertain as to render the bequest invalid. It also appears that a charitable gift is good where there is no limit of space expressed in the instrument. See 10 Am. Jur., Charities, Section 91.650.

With respect to subject matter in the same work, Section 86, the editors state that so long as the amount which is to be devoted to the charity is capable of definite ascertainment although the exact amount is not fixed by the instrument, there is no uncertainty as to subject matter. With respect to execution it is stated that indefiniteness as to the mode of execution in carrying out a particular purpose which may be indicated in general language does not make a charitable trust invalid. The testator need not say how the charity is to be carried out. He may leave the details to a trustee under the supervision of a court of equity. See Section 87. There is ample authority to the effect that a gift of property in trust wherein the income is to be applied to charitable purposes generally without any specification as to the particular charity is sufficiently definite to be enforced by a court of equity. Of course, the object must be made sufficiently certain to enable the court to enforce the execution of the trust. See 10 Am. Jur., Charities, Sec-

tions 96 and 97. To a greater or lesser degree the doctrines set forth herein have been recognized by the Supreme Court of this State on several occasions.

Thus, in the case of Collings v. Davis, 17 O. C. C. (NS) 221, 24 O. C. C. 84 (1911), affirmed by the Supreme Court without opinion, 87 Oh St 504, 102 N. E. 1122 (1912), it was held that a direction that the executor "apply $10. a month during the winter months to buy flour and coal for the worthy poor" was invalid and incapable of execution. In the case of Rogers v. Rea, Trustee, 98 Oh St 315 (1918), the Supreme Court in a per curiam opinion held invalid a charitable trust which directed that certain moneys be paid to such charitable purposes as the trustee deems proper. The execution of this trust had become impossible of execution since the trustee's discretion was essential to the execution of the trust. In the case of Dirlam, Exr. v. Morrow, 102 Oh St 279, 131 N. E. 365 (1921), the Supreme Court, in a per curiam opinion with one judge dissenting, held invalid a trust imposed on the residuum of the estate which provided that the income was to be used ". . . for religious and philanthropic work in Mansfield . . ." and then provided for certain stringent requirements for selection of a board to administer the income from the trust. The Court on page 281 states:

". . . trust imposed upon the residuum of the estate is so vaguely defined, the method of creating the administrative board or agency so uncertain and indefinite, and the method of execution of the charities named so ambiguous, that the court is compelled to hold that dispositive paragraph void for uncertainty."

The courts of this State have on several other occasions passed upon the validity of trust provisions and in the following cases held that the attempted testamentary gifts were valid: Landis v. Wooden, 1 Oh St 160 (1853), ". . . to the poor and needy, fatherless, etc., of Jefferson and Madison townships, . . . as are not able to support themselves, . . " Miller v. Teachout, 24 Oh St 525 (1874), ". . . for the advancement and benefit of the Christian religion, . . ."; Sowers v. Cyrenius, 39 Oh St 29 (1883), ". . . for the preaching of the gospel of the blessed Son of God, . . ."; Palmer v. Oiler, Exrx., supra, ". . . to be devoted to the needy & poor women."; Gearhart v. Richardson, supra, ". . . the aged and destitute people of said Township . . . who by reason of sickness or unavoidable misfortune are unable to provide for themselves."

The foregoing cases clearly indicate the liberal interpretation given to charitable bequests and a predisposition to construe the trust provisions as certain and valid rather than uncertain and invalid. It should be noted that the case of Palmer v. Oiler, supra, was decided on the same day as the case of Dirlam v. Morrow, supra. The former opinion was written by Marshall, C. J., who wrote the dissent in the Dirlam case.

It is apparent from the foregoing cases that the purposes of the trusts and the beneficiaries must be sufficiently certain that the court can enforce the execution of the trust. Each case inevitably must be determined upon the peculiar facts applicable thereto. Why then do these authorities and principles apply in the case at bar?

The Plaintiff contends that there are no tribes of Indians to be

benefited by testator's gift; and, since no such tribes are in existence, there is uncertainty as to beneficiaries and for that reason the trust is void. The Attorney General of the United States states that, "We are advised by the Bureau of Indian Affairs that there exist tribes which meet either or both designations and that an expert will be made available to so testify at the order of the Court."

The Attorney General of the State of Ohio states, "It would be foolhardy for the Attorney General to state flatly that there are tribes of indigent American Indians in the United States, assuming for the moment that the testator intended that the tribe must be indigent. Surely it is just as difficult for the petitioner to assert that there are no such beneficiaries. In any event indigence must be a matter of degree; it would be very difficult to conceive of an economic level where there would be no tribes of Indians in this country who are in need, and more difficult yet to imagine that there are no individual Indians of the various tribes who are in need of financial assistance to remove them from want and need."

By reason of the contentions of the parties, it now seems necessary for the Court to determine whom the testator actually intended to be the beneficiaries of his gift.

In further search of clarification the Court has consulted the Smithsonian Institution's Bureau of Ethnology's voluminous Bulletin 145, "Indian Tribes of North America" by John R. Swamp, United States Government Printing Office, Washington, D. C., 1953. It is evident that the word "tribe" has many and varied meanings. Numerically, it is used interchangeably with "nation" and with "sub-tribe"; geographically, it is used to designate those persons living in a certain locality, be that locality large or small; language-wise, the word is used to designate the root or stock from which the tribal language evolved. Suffice to say that tribes of American Indians are almost infinite in number, depending upon the classification which is applied.

The Court has also examined many laws by which Congress has given the Department of Interior and the Commission of Indian Affairs broad powers in the supervision of Indian affairs. It is quite evident from this reading that, from an administrative point of view, the Department of Interior is well aware of the identity of those tribes or nations of Indians in the United States over which it has some control, irrespective of how they are classified.

From this extraneous reading and a common-sense interpretation of testator's intention as expressed in Items 5 and 6, the Court has concluded that testator meant that the interest from the permanent fund should be used for the benefit of indigent individual American Indians who are members of various tribes recognized by the United States Government as distinguished from indigent American Indians who are not members of any of such tribes. He did not mean that the interest from the permanent fund should be used for the benefit of indigent tribes of American Indians as organizations or for the benefit of tribes whose members are all indigent American Indians. For emphasis it should be pointed out that the language in Item 6 reads that "said gift be

applied for the sole benefit of indigent **American Indians** and as provided in item 5."

Having the above in mind as the only reasonable interpretation of testator's intention, it seems clear that the beneficiaries of the trust are not so vague and indefinite that the trust is invalid and unenforceable and, furthermore, that the purpose of the trust is sufficiently defined that the Court could enforce its execution, if required to do so.

Fourth, may the United States government act as a trustee of a charitable trust? If so, should the Court in the exercise of its sound discretion permit the United States government to act as such trustee under all the facts and circumstances of this case? The Court adopts the excellent brief of the Attorney General of Ohio on this point. It would appear from an examination of the authorities that, in the absence of a statute otherwise providing, personal property may be bequeathed to the United States in trust for charitable purposes, providing the purposes are within the powers conferred upon the federal government by the Constitution of the United States, expressly or otherwise. Scott on Trusts, Volume I, Section 95, beginning at page 505; Scott on Trusts, Volume II, Section 378, pages 2040 and 2041; Bogert, Trusts and Trustees, Section 128, pages 546 and 547; 10 A. L. R. 1387.

The Court adopts the view expressed in the case of Dickson v. United States, 125 Mass. 311, 28 Am. Rep. 230 (1878), wherein the court held that the United States was capable of taking a gift by devise. On page 314 the court quoted the reasoning of Chief Justice Marshall in the case of United States v. Maurice, 2 Brock, 96, 109, in which he is defining the powers of the United States government:

"Its powers are unquestionably limited; but, while within those limits, it is a perfect government as any other, having all the faculties and properties belonging to a government, with a perfect right to use them freely, in order to accomplish the objects of its institution."

The United States of America through the Department of Interior and the Commissioner of Indian Affairs has, by virtue of Title 25, U. S. C., broad powers in the supervision of Indian affairs as has already been indicated. Among those items over which this supervision is exercised are contracts relating to tribal funds or property (Section 85); payment of annuities and distribution of goods (Section 111), payment of tribal funds to helpless Indians (Section 121), moneys or annuities of hostile Indians (Section 127), the rights of children born of the marriages between white men and Indian women (Section 184); and Section 306A gives the Secretary of Interior discretion "to make advances to old, disabled, or indigent Indian allottees, for their support . . ." Also see 31 U. S. C. 725s wherein Congress has made provision for the deposit of certain Indian funds. See Items (20), (66), and (67). Since the Secretary of Interior has an express grant of powers to accept donations for the benefit of Indians, it would appear that the gift made by Mr. Edgeter is germane to the duties which are to be discharged by the Commissioner of Indian Affairs.

In 27 Am. Jur., Indians, Section 5, page 545, it is said:

"In a general way it may be said that the recognized relation between

the Federal Government and the Indians is that of a superior and an inferior, whereby the latter is placed under the care and control of the former. The condition of the Indians and of Indian tribes within the limits of the United States is anomalous. The tribes, though in certain respects regarded as possessing the attributes of nationality, are held to be not foreign, but domestic dependent nations or communities. Indeed, from the beginning of the government Indians and their tribes have been treated as 'wards of the nation,' and 'in a state of pupilage.'"

And at Section 42, page 568, it is said:

"Not only does the Federal Constitution expressly authorize Congress to regulate commerce with the Indian tribes, but long-continued legislative and executive usage and an unbroken current of judicial decisions have attributed to the United States as a superior and civilized nation the power and the duty of exercising a fostering care and protection of all dependent Indian communities within its borders, whether within its original territory or territory subsequently acquired and whether within or outside the limits of a state. The power must exist in the Federal Government because it never has existed anywhere else, the theater of its exercise is within the geographical limits of the United States, it has never been denied, and it alone can enforce its laws on all tribes. Accordingly, plenary authority has been exercised by Congress from the beginning, and the power has always been deemed a political one, not subject to be controlled by the judicial department of the government."

Congress has provided the machinery by which such a trusteeship as that contemplated by the testator could be effectively administered. 25 U. S. C. 451, which vests such power in the Secretary of the Interior, reads as follows:

"The Secretary of the Interior is authorized in his discretion to accept contributions or donations of funds or other property, real, personal, or mixed, which may be tendered to, or for the benefit of, Federal Indian schools, hospitals, or other institutions conducted for the benefit of Indians, or for the advancement of the Indian race, and to apply or dispose of such donations for the use and benefit of such school, hospital, or other institution or for the benefit of individual Indians "

Since the Nation's inception, it has been the Federal Government which has regulated Indian affairs almost exclusively.

For the foregoing reasons the Court is of the opinion that the administration of a gift in trust for the benefit of indigent American Indians is within the authorized powers of the Federal Government and it has a perfect right to act as trustee for this purpose.

While the Court is of the opinion that the United States government in this case may act as trustee of the charitable trust, it is nevertheless cognizant that the textwriters and cases are quite emphatic that such trusts are not enforceable in the courts of the United States unless, of course, the Government consents to be sued. It has been pointed out that, while the United States as trustee cannot be sued, this is merely an impediment to the enforcement of the cestui's rights, but is no bar

to the creation of the trust. Bogert, Trusts and Trustees, Volume II, Section 328, pages 485 and 486. Also see Bogert, Trusts and Trustees, Volume I, Section 128, pages 546 and 547; Scott on Trusts, Volume III, Section 378, pages 2040 and 2041.

Since no trust will fail for the want of a trustee, the Court must face squarely the question whether or not in exercising sound discretion it may refuse to appoint the United States government as trustee. The determination of this question must turn on a fundamental principle of law, the jurisdiction of this Court. The Probate Court has jurisdiction over testamentary trusts, guardians, etc., who are encompassed by the general definition of "fiduciary." "Fiduciary" is defined in §2109.01 R. C. (§10506-1 GC) as follows:

"'Fiduciary' as used in **Chapters 2101.** to **2131.**, inclusive, **R. C.**, means any **person, association, or corporation,** . . . appointed by and accountable to the probate court . . ." (Emphasis supplied.)

Having regard for the fact that the United States of America is the sovereign and bearing in mind the doctrines of separation of powers between the federal government and the state governments, it would appear that the federal government is not included in the terms of the statute as a "person, association, or corporation, . . . accountable to the probate court." To reach a contrary conclusion would attribute to the General Assembly an intention that the federal government should be subject to the direction of the Probate Court, a principle that rejects itself upon statement. Whether or not the United States government has the power to act as a trustee is not a matter which can be controlled by the statutes of any of the States. Its power to act as a trustee must be independent of the actions of the courts of any state and independent of a grant of authority by appointment of this Court. It is questionable whether or not this Court has any discretion to appoint or refuse to appoint the United States government as trustee, once having determined that the objects to be accomplished by the trust are within the purposes and powers of the federal government.

In Item 8 of his will the testator made a strong statement of his intention that his sister, the Plaintiff in this action, should not receive "one cent from my estate." Undoubtedly from the words expressed in his will he had full and complete faith that the United States government would carry out his charitable purpose. The Court is of the opinion that he cannot have selected anyone more qualified for dealing with a gift for the benefit of indigent American Indians for the reasons as heretofore set out.

Since the United States government is not a fiduciary over which this Court has jurisdiction or supervision under the provisions of §2109.02 R. C. (§10506-2 GC), there is no statutory requirement that this trustee must receive letters of appointment from this Court prior to embarking upon the administration of the trust; and the executor, after the estate is completely administered, may, in the opinion of this Court, deliver the residuary estate to the United States government as trustee, through the Department of Interior, and be discharged as provided by law of any further responsibility over said fund.

By reason of the foregoing opinion it does not seem to this Court necessary to discuss, analyze, or apply the equitable doctrine of cy pres or the equitable doctrine of deviation which have been so carefully analyzed by the Court of Appeals of this District in the case of **Craft v. Shroyer, 49 Abs 385 (1947).**

Counsel may submit an appropriate entry to this Court for approval. Costs to the estate.