REGISTER OF WILLS FOR BALTIMORE CITY *v.*
COOK, EX'R AND MERCANTILE-SAFE
DEPOSIT AND TRUST CO., TR.

[No. 145, September Term, 1965.]

266

Decided February 3, 1966.

The cause was argued before PRESCOTT, C. J., and HAMMOND, MARBURY, OPPENHEIMER and McWILLIAMS, JJ.

*Thomas A. Garland, Assistant Attorney General,* with whom was *Thomas B. Finan, Attorney General,* on the brief, for appellant.

*William A. Grimes* for appellees.

OPPENHEIMER, J., delivered the opinion of the Court.

This case involves the question of whether bequests to help

further the passage of the proposed Equal Rights Amendment and to aid women who may be in distress or suffer any injury as a result of any inequalities in the laws of Maryland or other states or of the United States are exempt from inheritance tax under the Maryland law. The taxes involved were paid under protest and the appellees appealed to the Maryland Tax Court. The court awarded refunds; the Register of Wills appealed to the Baltimore City Court, which affirmed the Tax Court decision, and this appeal resulted.

Jessie Marjorie Cook died December 29, 1960, a resident of Baltimore City, and her will was probated in the Orphans' Court of Baltimore City. The provisions involved read as follows:

"TWENTY-SECOND: I give and bequeath unto Helen Elizabeth Brown and Rose S. Zetzer, attorneys at law, the sum of $10,000.00 to be held in Trust for the following purposes: to pay unto the Maryland Branch of the National Woman's Party, One Hundred ($100.) Dollars per year for a period of ten years, if said organization remains in existence and is active for that length of time; the rest and residue of said bequest in trust shall be used to help further the passage of and enactment into law of the EQUAL RIGHTS AMENDMENT to the Constitution of the United States; the said Trustees or their successors, if any, shall have absolute control of said sum of money and use the same as in their joint judgment may seem best to carry out the purposes for which this bequest is intended.

"TWENTY-THIRD: I give and bequeath unto Helen Elizabeth Brown and Rose S. Zetzer, attorneys at law, in Trust and to their successors, in trust, the sum of $25,000.00 for the purpose of aiding and assisting any woman who may be in distress or suffer any injury to herself or her property as a result of any inequalities in the laws of the State of Maryland or of any of the United States; said Trustees or their successors in trust shall have absolute control of said trust fund and shall use the same as in

their best judgment jointly may be deemed advisable to carry out the purposes for which said bequest is intended and their decision shall be final.

"In the event, however, that said Trustees shall be unable to agree, each Trustee shall select one competent person who shall consider the matter and file their opinion. If these two arbitrators fail to agree, then these two shall mutually select a competent third person and the decision of any two of the three persons thus selected shall be conclusive and be accepted as final.

"TWENTY-EIGHTH: All the rest and residue of my estate, whether real, personal or mixed and wheresoever situate, which I now own, possess or to which I may be entitled to at the time of my death, or at any time thereafter, I give, devise and bequeath in Trust to my Trustees above named; viz: Helen Elizabeth Brown and Rose S. Zetzer, to be used to further the cause of equality for women in civil and economic rights and to carry on the work for women in accordance with the objectives as outlined in paragraphs Nos. 'Twenty-second' and 'Twenty-third' herein."

Vernon Cook, Jr., the testatrix's brother and executor, filed a bill in equity to test the validity of the bequests and to determine whether his sister's will executed the power of appointment in the will of Vernon Cook, Sr., his father and the father of the testatrix. The litigation resulted in a settlement under which Mr. Cook received one-half of the residue of the trust held by Mercantile-Safe Deposit & Trust Company under the will of Vernon Cook, Sr., and the trustees under Miss Cook's will received the amounts of the specific bequests and the residue of Miss Cook's estate plus the remaining half of the residue of the Mercantile-Safe Deposit fund. The trustees under the testatrix's will received approximately $190,000 from each source, in the total amount of about $380,000, and placed the administration of the fund under the general jurisdiction of the Circuit Court.

Code (1965 Repl. Vol.) Article 81, sec. 150, imposes a col-

lateral inheritance tax of 7½%, with certain exemptions. The exemption provision here involved is as follows:

"\* \* \* And provided further that nothing in this section shall apply to property passing, in trust or otherwise, to or for the use of a corporation, trust or community chest, fund, or foundation, created or organized under the law of the United States or any state or territory or possession of the United States, organized and operated exclusively for religious, charitable, scientific, literary or educational purposes, including the encouragement of art and the prevention of cruelty to children or animals, if no part of the net earnings of which inures to the benefit of any private shareholder or individual, and (i) if a substantial part or all of the activities and work of which are carried on in the State of Maryland or in the District of Columbia; \* \* \*"

The taxes were paid under protest and the refunds awarded by the Maryland Tax Court totaled approximately $25,000 with interest from July, 1963.[1]

In the hearing before the Maryland Tax Court, the two trustees named in the will, Helen Elizabeth Brown and Rose S. Zetzer, both testified. In addition, various documents were offered in evidence. One exhibit was a statement of the purposes and functions of the Maryland Branch of the National

---

1. The Register of Wills originally allowed the exemption as to the $9,000 remaining from the $10,000 bequest in the Twenty-Second paragraph of the will after the payment of the total of $1,000 to the Maryland Branch of the National Woman's Party. This allowance was on the advice of the Attorney General. The Attorney General now states that this advice was erroneous. The Register of Wills allowed a proportionate exemption as to the residuary bequest based on the same assumption.

In this appeal the Register of Wills contends that none of the bequests in the Twenty-Second, Twenty-Third and Twenty-Eighth paragraphs of the will was entitled to the exemption, although the taxes paid and ordered refunded do not include the exemptions originally allowed by the Register of Wills. For the purposes of this decision, we consider the taxability vel non of all of the bequests in the three paragraphs of the will.

Woman's Party, of which Miss Brown is a past president. The statement reads in part as follows:

> "The Maryland Branch of the National Woman's Party has for its fundamental objective to secure for women complete equality under the law with respect to their property, personal, social economic and civil rights and privileges, and to that end to inform, detail and specify what rights and privileges women possess presently, and to what extent these rights and privileges are curtailed or limited. These rights and limitations of rights are brought to focus by way of public discussion and education. Furthermore, to accomplish these purposes, the National Woman's Party, Maryland Branch, whose membership consists of businesswomen, homemakers, lawyers, and civic minded women, arrange, through public meetings and discussion groups, to further the cause of equality of opportunity under the law for women in business, professions and public offices and encourage the enlightened representatives and leaders in our community to remove every vestige of discrimination which is rampant in many of our antiquated customs * * *"

The testimony shows that the Maryland organization works for the passage of the Equal Rights Amendment, and to remove discriminations in the laws against women throughout the United States. It is a branch of the National Woman's Party, which is incorporated. At the time Miss Cook's will was probated, the Maryland Branch may not have been incorporated.

Another exhibit put into evidence was the report of the President's Commission on the Status of Women made in 1963. This report includes the following statements: "Eight out of ten women are in paid employment outside of the home at some time during their lives * * *" "In the face of these amendments, however [the Fifth and Fourteenth Amendments to the Federal Constitution] there remain, especially in certain State laws and official practices, distinctions based on sex which discriminate against women." "Lower pay rates for women doing the same work as men are not uncommon." While in 1963 the

Federal Fair Labor Standards Act of 1938 was amended to require equal pay for equal work, "State laws should establish the principle of equal pay for comparable work." "In many specific areas of State law, the disabilities of married women are considerable."

The testatrix was deeply interested in women's rights. Her trustees conceive their duties as "educational primarily and charitable." Miss Zetzer testified that a major legal "discrimination" in Maryland is the wife's obligation to accept a suitable domicile selected by her husband. The trustees believe, however, that there is greater and more serious legal discrimination in other states. There was also testimony that, in Maryland, discriminations have been found in certain employment practices and that women still do not have equal pay for equal work.

There was testimony about guidelines for the administration of the trust which the trustees formulated under the title "The Marjorie Cook Foundation." The testimony is unclear as to whether this formulation was made prior to distribution. There was also testimony as to the scope and nature of the trusts after distribution. However, counsel agree that the legal questions involved in this appeal are to be adjudicated on the basis of the provisions made in the will, irrespective of what may or may not have been done by the trustees after distribution.

The appellant contends that the bequests are not to a trust "organized and operated exclusively for religious, charitable, scientific, literary or educational purposes." Counsel have submitted thorough, fair and helpful briefs.

The case, in our view, involves two questions. First, is the general nature of the bequests charitable under the Maryland law?; and, second, if the first question is answered in the affirmative, are the trusts exclusively for charitable purposes, in view of the right of the trustees to employ the funds to support candidates for political office who favor women's rights, to contribute to the Maryland Branch of the National Woman's Party, and to work for the passage of the Equal Rights Amendment? Counsel agree that, if the trusts are not charitable, the bequests are taxable.

I

The history of the statutory provision as to the exemption of charitable trusts is set forth in *Second Nat'l. Bank v. Second Nat'l. Bank*, 171 Md. 547, 555-57, 190 Atl. 215 (1937). Many gifts for charitable uses had been declared to be invalid because of the indefiniteness of the donees. In 1931, an Act (now Code (1957) Art. 16, sec. 195) was passed declaring that henceforward the statute of 43 Elizabeth Ch. 4 applies to gifts and trusts for charitable purposes. Judge Sloan, for the Court, said:

> "This statute did not mark the beginning of charitable uses, as courts of equity had, before it was enacted, assumed jurisdiction of charitable trusts. It made legal and enforceable trusts and gifts which had been declared invalid because indefinite and general. *Vidal v. Philadelphia*, 2 How. 127, 196, 11 L. Ed. 205, 233. The courts, in states where the statute had been adopted, did not confine themselves to the charities expressly named, and many objects have been upheld as charities, which the statute neither mentions nor distinctly refers to. Thus a gift 'to the poor' generally, or to the poor of a particular town, parish, age, sex, race, or condition, or to poor emigrants, though not falling within any of the descriptions of poor in the statute, is a good charitable gift."

In *State Tax Comm'n. v. Whitehall Foundation, Inc.*, 214 Md. 316, 320-21, 135 A. 2d 298 (1957), Judge Hammond, for the Court, said:

> "The State Tax Commission's argument that tax exemption must be strictly construed is sound. This Court has said often that to doubt is to deny an exemption. Thus the statute's direction in Code, 1951, Art. 81, Sec. 8, is declaratory of the law. Nevertheless, strict construction does not require that an unreasonable or unusual meaning must be given to the words used in exemption statutes. We find nothing to show that the words 'charitable' and 'educational' were intended by the Legislature to have and convey other than their usual meaning in law.

"Considering only the activities of Whitehall Foundation, Inc., at Blakeford Farms, and reading the words of the statute as having their usual legal meaning, we think that those activities are charitable and educational. *Rabinowitz v. Wollman,* 174 Md. 6, shows the breadth, in the legal sense, of charitable purposes. This breadth is reiterated in *Restatement, Trusts,* cited, relied on in the *Rabinowitz* case. Sec. 368 b says: *'The nature of charitable purposes.* A purpose is charitable if its accomplishment is of such social interest to the community as to justify permitting the property to be devoted to the purpose in perpetuity. There is no fixed standard to determine what purposes are of such social interest to the community; the interests of the community vary with time and place. At common law in England and in the United States it is agreed that the relief of poverty, the advancement of education and of religion, the promotion of health, the accomplishment of governmental or municipal purposes, are of such social interest to the community as to fall within the concept of charity. As to what other purposes are of such interest to the community as to be charitable, no definite rule can be laid down. These various purposes are dealt with in the following Sections.' "

The bequest to the trustees in the Twenty-Second paragraph of the will is for two purposes: Payments to the Maryland Branch of the National Woman's Party and to help further the passage of the Equal Rights Amendment to the Constitution of the United States, which is designed to prohibit discrimination against women by reason of their sex. The bequest to the trustees in the Twenty-Third paragraph is for the purpose of aiding and assisting any woman who may be in distress or suffer any injury to herself or her property as a result of any inequalities in the laws of Maryland or of the United States. The residuary bequest to the trustees in the Twenty-Eighth paragraph is to further the cause of equality of women in civil and economic rights and to carry on the work for women in accordance with the objectives outlined in the Twenty-Second and Twenty-Third paragraphs.

The primary purposes of all the trusts, in our view, are the elimination of discriminations against women and to give relief to women injured by such discriminations. The passage of the Equal Rights Amendment is one of the methods set forth by the testatrix to endeavor to accomplish these objectives, both directly and by contributions to the Maryland Branch of the National Woman's Party.

Trusts to eliminate discriminations and to provide relief for the persons discriminated against have been generally upheld as charitable. *Collier v. Lindley*, 203 Cal. 641, 266 P. 526 (1928), and *Edgeter v. Kemper*, 73 Ohio L. Abs. 297, 136 N. E. 2d 630 (1955) (trust to eliminate discriminations against Indians and to provide for their relief) ; *Lewis's Estate*, 152 Pa. 477, 25 Atl. 878 (1893) (trust to eliminate discrimination against Negroes) ; *In Re Murphey's Estate*, 7 Cal. 2d 712, 62 P. 2d 374 (1936) (trust to eliminate discriminations against Jews).

> "If the general purposes for which a trust is created are such as may be reasonably thought to promote the social interest of the community, the mere fact that a majority of the people and the members of the court believe that the particular purpose of the settlor is unwise or not adapted to the accomplishment of the general purposes, does not prevent the trust from being charitable * * *
>
> "The Courts do not take sides or attempt to decide which of two conflicting views of promoting the social interest of the community is the better adapted to the purpose, even though the views are opposed to each other * * *" Restatement, *Trusts* 2d (1959) § 374 comment 1.

By the great weight of authority, if a trust is essentially charitable in nature, it is still charitable even though one of its purposes is to endeavor to effectuate a change of existing law. *George v. Braddock*, 45 N. J. E. 757, 18 Atl. 881 (1889) ; *Garrison v. Little*, 75 Ill. App. 402 (1897) ; *Taylor v. Hoag*, 273 Pa. 194, 116 Atl. 826 (1922) ; *Collier v. Lindley, supra*. See also *Haines v. Allen*, 78 Ind. 100 (1881).

Restatement, *Trusts* 2d (1959) § 374 comment j reads as follows:

> "*Change in existing law.* A trust may be charitable although the accomplishment of the purpose for which the trust is created involves a change in the existing law. If the purpose of the trust is to bring about changes in the law by illegal means, such as by revolution, bribery, illegal lobbying or bringing improper pressure to bear upon members of the legislature, the purpose is illegal. See § 377. The mere fact, however, that the purpose is to bring about a change in the law, whether indirectly through the education of the electors so as to bring about a public sentiment in favor of the change, or through proper influences brought to bear upon the legislators, does not prevent the purpose from being legal and charitable."

Bogert and Scott take the same view.

> "Many American decisions and, it is submitted, the better reasoned cases, declare that trusts which seek to bring about better government by changing laws or constitutional provisions are charitable, so long as the settlor directed that the reforms should be accomplished peaceably, by the established constitutional means, and not by war, riot, or revolution." Bogert, *Trusts & Trustees* (2d ed. 1964) § 378, "Changes in the Law."

> "In the United States the notion that a trust for a purpose otherwise charitable is not charitable if the accomplishment of its purposes involves a change in existing laws has been pretty thoroughly rejected. Many reforms can be accomplished only by a change in the law, and there seems to be no good reason why the mere fact that they can be accomplished only through legislation should prevent them from being valid charitable purposes." 4 Scott, *Trusts* (2d ed. 1956) § 374.4 at 2677.

Two Massachusetts decisions are contrary to what is admitted to be the majority view. In *Jackson v. Phillips*, 96 Mass.

(14 Allen) 539, 555 (1867), the court held that a bequest to secure the passage of laws granting women the right to vote and all other civil rights enjoyed by men could not be sustained as a charity. Justice Gray said, for the court:

> "But it is the duty of the judicial department to expound and administer the laws as they exist. And trusts whose expressed purpose is to bring about changes in the laws or the political institutions of the country are not charitable in such a sense as to be entitled to peculiar favor, protection and perpetuation from the ministers of those laws which they are designed to modify or subvert."

The same will involved a trust designed to secure the abolition of slavery and this trust the court held charitable, even though its accomplishment would necessitate a fundamental change in the law. *Jackson* was followed in *Bowditch v. Attorney General,* 241 Mass. 168, 134 N. E. 796 (1922), which held a bequest to promote the causes of women's rights not charitable because impliedly it looked to the accomplishment of the testator's intention by legislation.

The above decisions from other states show that the Massachusetts doctrine has not been followed. In *Hoag, supra,* the Pennsylvania Supreme Court, in refusing to follow the Massachusetts cases, said, 273 Pa. at 199-200:

> "We are led to conclude that a trust for a public charity is not invalid merely because it contemplates the procuring of such changes in existing laws as the donor deems beneficial to the people in general, or to a class for whose benefit the trust is created. To hold that an endeavor to procure, by proper means, a change in a law, is, in effect, to attempt to violate that law, would discourage improvement in legislation and tend to compel us to continue indefinitely to live under laws designed for an entirely different state of society. Such view is opposed to every principle of our government, based on the theory that it is a government 'of the people, by the people, and for the people,' and fails to recognize the right of those who

make the laws to change them at their pleasure, when circumstances may seem to require. With the wisdom of the proposed change the courts are not concerned. We perform our duty in determining whether or not the method adopted to make the change violates established law. In the present case we find no apparent intent to violate any law. On the contrary, the trust specifically requires its objects to be accomplished by 'lawful means.' There is nothing inherently unlawful either in the object to be attained or the means to be adopted."

In *Garrison v. Little, supra,* the Illinois court said, 75 Ill. App. at 412:

"Whether the attainment of the elective franchise by women, to the extent enjoyed by men, would be as beneficial in its results to society as its friends hope or believe, is not a question for us to consider. Upon this subject there are widely divergent opinions; but if the cause was dear to the heart of the testatrix, we see no reason why she should not be permitted to devote a portion of her estate to its advancement. She believed it to be for the benefit of women. and for that purpose and because of her interest in their welfare and not from any selfish motive, she made the bequest in question."

The appellant cites, in another connection to be hereafter considered, *Slee v. Commissioner of Internal Revenue,* 42 F. 2d 184, 185 (2d Cir. 1930). That case involved the deductibility from income of gifts made by the petitioner to the American Birth Control League, which advocates changes in the law. The first question was whether the League was organized for charitable or educational purposes. Judge Learned Hand, in his opinion, said: "That the League is organized for charitable purposes seems to us clear * * *"

Great as is our respect for the Massachusetts court, we believe that the majority view should be followed in this case. The provisions of the testatrix's will make it evident to us that her primary objective was to provide funds for the elimination

of discriminations against women and that support of the passage of the Equal Rights Amendment and other national or state legislation to this end was merely an incidental means to the accomplishment of the general purpose. All the provisions of the will look only to legal means to effectuate the objective. The bequests do not provide in any way for contributions to a political party as such. Whatever may be the views of individuals, laymen or judges, as to the need or desirability of the passage of the Equal Rights Amendment or similar legislation, our system of government is not opposed to attempts to secure legislative changes by legal means. Indeed, the channelling of efforts to effect social or political changes to the public discussions involved in proposed constitutional amendments or legislation, rather than by possible violence or subversion, is fundamental to our democracy.

Realistically, a charitable purpose such as that of the testatrix, can often only be effectuated by legislative change. Recognition of that fact by the testatrix does not alter what we have found to be the essentially charitable nature of the bequests here involved.

## II

Even though the bequests are charitable in nature, the exemption clause of the statute provides in effect that they are taxable unless they are exclusively for religious, charitable or similar purposes. The National Woman's Party and its Maryland Branch are non-profit organizations. In the sense that the bequests here involved do not provide for or permit personal benefit of any private shareholder or individual, except members of the designated class of beneficiaries of the fund, they are exclusively for a charitable purpose. The question remains, however, as to whether the provisions which permit the use of the funds in an endeavor to change existing laws make the charitable purpose non-exclusive.

The Maryland law contains no provision similar to that in the federal income and estate tax statutes, which specifically provide that the deduction is to be allowed only if no substantial part of the activities of the donee or legatee is carrying on propaganda or otherwise attempting to influence legislation.

If, as we have found, the purposes of the trusts here involved

are charitable, they are no less charitable because of the means authorized to effectuate them, when, as here, those means are legal and not against public policy. Contributions to political parties are not involved. Although efforts to bring about changes in the law are envisioned and authorized, these are only ways to effectuate the purposes; they do not make the purposes themselves less charitable in nature or dilute their nature. Had the General Assembly wished to exclude bequests otherwise charitable from the exemption if a substantial part of a bequest is used in attempts to influence legislation, it could easily have done so by incorporating in the Maryland statute a clause similar to the provisions which the Congress has had in effect for several decades.

The appellant relies on federal cases construing the federal statutes in respect of charitable deductions. It is true that several earlier federal decisions take the same point of view as did the Massachusetts cases as to the effect of efforts to change the law upon the charitable nature of the organizations involved. In *Slee v. Commissioner, supra,* while the court found that the American Birth Control League was organized for charitable purposes, it held that the taxpayer could not deduct gifts to the League from his gross income because the League worked for the repeal of laws preventing birth control and was therefore not exclusively charitable under the Internal Revenue Act then in effect. *Leubuscher v. Commissioner of Internal Revenue,* 54 F. 2d 998 (2d Cir. 1932) is to the same effect; in that case, a legacy to a club incorporated to advocate the single tax doctrine of Henry George was held not deductible under the estate tax law as a legacy for a corporation organized exclusively for educational purposes, because the organization had for its purposes the effectuation of a change in the existing system of taxation. *Vanderbilt v. Commissioner of Internal Revenue,* 93 F. 2d 360 (1st Cir. 1937) involved the deductibility from the gross estate of a bequest to the National Woman's Party. The court held that although the corporation was not organized for profit and no part of its earnings enured to the benefit of any shareholder or individual, the efforts to enact and repeal laws were political activities and that, therefore, the bequest was not deductible as being exclusively educational.

These cases were decided before the Internal Revenue Code had been amended by the addition of the phrase "and no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation." *Girard Trust Co. v. Commissioner of Internal Revenue,* 122 F. 2d 108, 110 (3rd Cir. 1941) was decided after the amendment. In that case, the testatrix had left a bequest to the Board of Temperance, Prohibition and Public Morals of the Methodist Episcopal Church. The commissioner had disallowed the exemption and the Board of Tax Appeals confirmed his action. Part of the activity of the Board of Temperance was an attempt to influence legislation. The court reversed the Board of Tax Appeals and held that the bequest was deductible. Judge Goodrich, for the majority, said:

"* * * [W]e had Sunday observance laws long before prohibition of alcohol became an important issue. The advocacy of such regulation before party committees and legislative bodies is a part of the achievement of the desired result in a democracy. The safeguards against its undue extension lie in counter-pressures by groups who think differently and the constitutional protection, applied by courts, to check that which interferes with freedom of religion for any.

"Nor has the law sought to draw such a bright line between the exercise of private and public influence. Judge Hand has pointed out that the promoters of a charity are not unclassed when the charity seeks a special charter or when a society to prevent cruelty to children seeks positive support of law to accomplish its ends or when a university seeks legislation to provide its appropriations. Surely a church would not lose its exemption as a religious institution if, pending a proposal to repeal Sunday observance laws, the congregation held a meeting on church property and authorized a committee to appear before a legislative body to protest against the repeal. The majority of the charitable trust cases recognize the validity of a gift to prohibit or minimize manufacture and sale of in-

toxicating liquor. They are not directly controlling, of course. But they furnish a strong analogy."

*International Reform Federation v. District Unemployment Compensation Bd.,* 131 F. 2d 337, 340 (D.C.Cir. 1942) involved an exemption, not under the Internal Revenue laws, but under the District of Columbia Unemployment Compensation Act. The question was whether the Federation was an employer within the meaning of the Act. The Act exempted any corporation or foundation organized exclusively for religious, charitable, scientific, educational, or other similar purposes from the requirement that every employer must make payments to the fund. The Federation had as some of its purposes the enactment of laws prohibiting the alcoholic liquor traffic and traffic in white slaves and narcotics. The Compensation Board contended that, even if the Federation should be classed as a corporation organized for charitable, religious or educational purposes, it was not organized and operated exclusively for those purposes. The court disagreed and held the Federation was not subject to the Act. Chief Judge Groner, for the majority of the court, said:

"It would seem to us to be going very far to say that these legislative activities accomplish a metamorphosis in appellant's character whereby it is changed from a charitable or educational to a political organization. Such activities have never been classified as lobbying in the sense in which that activity has been either prohibited or licensed. Hence we see no actual difference between the education of the individual—admittedly proper—and the education of the legislator, where both are directed to a common end, and that end, not the advancement, by political intrigue or otherwise, of the fortunes of a political party, but merely the accomplishment of national social improvement. There is nothing new in this position, and it has found support in many cases."

*Marshall v. Commissioner of Internal Revenue,* 147 F. 2d 75 (2d Cir. 1945) held that bequests in trust to promote the theory of production for use and not for profit, to promote civil

liberties and to preserve wilderness areas, were not deductible from the federal estate tax because political activity was a definite purpose of the trust. The court emphasized that the political purposes were substantial and therefore within the exception of the Internal Revenue Code. In *Seasongood v. Commissioner of Internal Revenue*, 227 F. 2d 907 (6th Cir. 1955) it was held that deductions from individual income tax returns for contributions made to a local Good Government League were deductible, even though a minor portion of the time and effort of the League was devoted to activities found to be political. The court held that the statute must be liberally construed to effect its purpose and that the legislative activities of the League in relation to all its other activities were not substantial. *Dulles v. Johnson*, 273 F. 2d 362 (2d Cir. 1959) involved the deductibility under the federal estate tax law of bequests to city, county and state bar associations. Part of the work of the associations was study and report on proposed and existing legislation. Copies of the reports and resolutions were often sent to the legislative and other branches of federal and state governments. The court held that the activities of the associations in respect of impending legislation were not such a substantial part of their activities as to cause the forfeiture of their charitable status.

Taken as a whole, the trend of the federal decisions indicates to us that efforts to change the law do not necessarily affect the exclusive charitable nature of an organization, despite the restriction contained in the Internal Revenue Code, which, as we have pointed out, is not a part of the Maryland law.

We find that the bequests here involved are exclusively charitable within the meaning of the Maryland statute and therefore are deductible.

*Order affirmed; costs to be paid by the appellant.*