[Civ. No. 3882. Fourth Dist. Dec. 16, 1949.]

ERNEST L. PRITCHARD et al., Appellants, v. CRESTLINE VILLAGE MUTUAL SERVICE COMPANY (a Corporation) et al., Respondents.

John W. Preston and John W. Preston, Jr., for Appellants.

Surr & Hellyer for Respondents.

BARNARD, P. J.—This is an action for declaratory relief to determine the voting rights of shareholders in a corporation. The plaintiffs contend that this is a nonprofit corporation with one class of membership, the members having equal voting rights; that the capital stock, as such, represents no voting

power; and that the issued shares are merely evidence of single memberships regardless of the number of shares owned by any individual. The defendants contend that the voting rights rest in the owners of the outstanding capital stock in proportion to the number of shares owned.

The defendant corporation was organized in 1924 under the name "Crestline Village Mutual Water Company No. 1," with an authorized capital stock of $25,000 divided into 2,500 shares of the par value of $10 each. Its articles of incorporation stated that it was formed for the purpose of furnishing water at cost to its stockholders in proportion to the number of shares held by each, and further stated "it being the intent and purpose of this corporation to be mutual and without profit to any of its stockholders."

In May, 1932, the articles of incorporation were duly amended as follows: 1. the name was changed to "Crestline Village Mutual Service Company"; 2. the number of shares was increased from 2,500 to 7,500, to be without par value and to be of one class only; 3. the corporation was to have perpetual existence; 4. the stated purposes were increased to cover a number of services, other than supplying water, including the maintenance of roads and the supplying of electric energy, sewage facilities, garbage disposal, and fire, police and sanitary protection. The amended articles further provided "that the corporation is not formed and does not exist with a view to pecuniary gain or profit to its shareholders," and that it "shall conduct its business and operate its property as a nonprofit cooperative corporation for the exclusive use and benefit of its shareholders, and without any profit accruing to them from the business of the corporation." The additional 5,000 shares thus provided for were issued to another corporation in exchange for its assets. That corporation was then dissolved and these 5,000 shares were distributed in liquidation to its shareholders. There is no evidence that the company ever engaged in furnishing any of the permitted services, other than the supplying of water. It does appear that this corporation has, for many years, owned property of a considerable value.

The bylaws of the corporation provide, among other things, that certain shares of stock were attached to specific lots within the described area to be served by the company; that unattached shares could be attached at the request of their registered owners, who should designate the lot to which the share was to be attached; that the attached shares passed with the

title to the lots to which they were attached, unless expressly reserved with the approval of the directors; that water was to be furnished only where a share was attached to a lot; and that a share could be divided into ten equal parts, and one or more parts attached to a particular lot. These fractional shares, when attached to lots, carried rights to water service equal to full shares but the holders of fractional shares had only a fractional vote. Treasury shares were not issued to purchasers of lots. At the time of the trial there were 1,350 shares of Treasury stock which had never been issued, and 6,150 shares of issued stock of which 2,369 were attached to lots. The defendant Whitelock owned 3,773 shares of the issued stock, only two of which were attached to lots.

From 1924 to 1940, one Charles Mann, the original Crestline subdivider, owned and voted the controlling stock of the defendant corporation. In October, 1940, the defendant Whitelock acquired from Mann approximately 3,900 shares of this stock, together with some vacant lots and a considerable acreage of unsubdivided property. Since acquiring the Mann shares in 1940, Mr. Whitelock has been president and manager of the corporation and has owned and voted the controlling stock therein. Since that time he has opened up three subdivisions containing 491 lots and has sold about half of them, transferring to each purchaser and causing to be attached to the particular lot a share, or fractional share, of the stock theretofore held by him.

In July, 1947, an amendment was added to the bylaws of the corporation, by the written assent of the controlling shareholders, which permitted the directors to impose an annual maintenance charge upon lots within the district, not exceeding $25 per lot, for the purpose of providing additional revenue for operating expenses, additions and improvements, the payment of indebtedness and other corporate purposes. Pursuant thereto, the directors immediately "levied" a maintenance charge of $17 per lot for the year 1947.

The levy of this maintenance charge led to the bringing of this action, which was filed in December, 1947. After a trial the court found, so far as material here, that the defendant corporation was organized and existing pursuant to the provisions of the General Corporation Law and not pursuant to any of the provisions of title 12, article 1 of the Civil Code; that the voting power of shareholders is determined by the number of shares each owns, each being entitled to one vote

for each share of stock; and that this corporation does not have or consist of "any member or members," and never has been a corporation of that character. As a conclusion of law, it was found that this corporation is organized and existing under the General Corporation Law and not as one organized or existing under the terms of title 12, part 4, division 1 of the Civil Code, or under the provisions of part 1, division 2 of title 1 of the Corporations Code. Judgment was accordingly entered which repeated this conclusion of law and expressly adjudged that each record holder of a share, or a fractional share, is entitled to vote upon the basis and at the rate of one vote for each share of stock held. From this judgment the plaintiffs have appealed.

Admittedly, the corporate respondent is a nonprofit corporation in the sense that there can be no distribution of profits to shareholders, prior to dissolution. From the beginning it has provided for and issued shares of stock, and its bylaws have provided for voting rights in proportion to the shares held. The question presented, in view of its nonprofit character, is whether it is a stock corporation organized and existing under the General Corporation Law or whether it must be held to be a membership corporation, with equal voting rights among the members, regardless of the number of shares held by them. Incidentally, the appellants contend that the nonprofit corporation law, as it existed in 1924, when this corporation was first formed, did not authorize the formation of stock corporations, since section 653u of the Civil Code then provided, among other things, that "such corporation shall not issue capital stock, but shall issue a member certificate to each member. Its business shall not be carried on for profit." Not only does it rather clearly appear that this corporation was not organized under the provisions of title XXII, in which section 653u then appeared, but title XXII as it then existed was repealed in 1931 with the express provision that all corporations formed thereunder should thereafter exist under the General Corporation Law (Stats. 1931, p. 1840.)

Appellants' main contention is that this is a nonprofit corporation under the provisions of title 1, division 2, part 1 of the Corporations Code; that the Nonprofit Corporation Law, as therein set forth, provides only for membership corporations and does not authorize the formation of stock corporations; and that it follows that the voting rights of this

nonprofit corporation are now vested in its members, each having but a single vote.

In 1931, the corporation laws were extensively revised, the "General Corporation Law" being placed in title 1, part 4 of division 1 of the Civil Code, and the "General Nonprofit Corporation Law" being placed in title 12 of that part and division. (Stats. 1931, ch. 862 and 871.) There are apparent inconsistencies between some of the provisions of these two general laws. The statements made in each of them with reference to its own application and its relation to the other, with various exemptions and exceptions, are somewhat confused. As a result, the application of these laws, respectively, to a particular set of circumstances is not as clear as could be desired.

Title 12 provided that a nonprofit corporation "may" be formed for religious, charitable and like purposes, including the rendering of services; that the articles of incorporation "shall" state certain things, including the number and qualifications of its members; that the corporation shall keep a membership book; and that every member of such a corporation shall be entitled to one vote unless otherwise provided in the articles or bylaws. There was a further provision (§ 604) that a nonprofit corporation shall not issue shares of stock, but that membership therein may be evidenced by certificates. Section 605d provided that this General Nonprofit Corporation Law "shall extend to all nonprofit corporations now existing or hereafter formed, so far as applicable," unless there be a special and inconsistent statutory provision relating to any class of such corporations. That section further provided that the provisions of the General Corporation Law (title 1) should apply to corporations "formed under this title, except as to matters specifically covered by this title," and that for this purpose "shareholder" shall include "member" and "shares" shall include "memberships."

On the other hand, the General Corporation Law (title 1) contains a number of provisions which seem to indicate that a corporation may be formed under that title for any lawful purpose, and that it was intended to apply to some nonprofit corporations. Such provisions are found in sections 279, 285, 290, 294, 300b, 303 and 320, as contained in that title. Section 279 states that the provisions of that title "are applicable to every private corporation, profit or nonprofit, stock or nonstock, now existing or hereafter formed," and the present and

future securities thereof, unless such corporation be expressly excepted from the operation thereof, or unless there be a special provision with respect to a particular class which is inconsistent therewith. That section then provides: ''The existence of corporations heretofore formed or existing shall not be affected by the enactment of this title nor by any change in the requirements for the formation of corporations nor by the amendment or repeal of the laws under which they were formed or created.'' In the report of the legislative counsel it was stated that while this section covered the same ground as the former section 283, the language had been revamped ''to expressly include nonprofit'' corporations, and their outstanding and future securities, ''where no special provisions exist,'' and to provide that the existence of the corporations theretofore formed should not be affected by the revised title.

The General Corporation Law (title 1) is thus made applicable to a nonprofit corporation then existing unless such corporation was somewhere ''expressly excepted'' from the operation of that title, or unless there was some special provision with relation to a particular class of corporation which was inconsistent therewith. It further provided that the existence of corporations theretofore formed should not be affected by the enactment of that title, by any change in the requirements for the formation of corporations, or by the amendment or repeal of the laws under which they were formed. In view of the definite and express provisions thus contained in section 279, it should not be held that the vague and uncertain provisions of section 605d in title 12 prevented the continued existence of this corporation as one existing under the General Corporation Law. The corporation had been given life and effect by the issue of stock, which had been exchanged for assets which enabled the company to operate, and the stock structure had become and was an integral part of the corporation's existence. While section 605d provided that the provisions of title 12 should extend to nonprofit corporations then existing or thereafter formed ''so far as applicable,'' other statutory provisions were here applicable and in force. That this result was intended is further indicated by the fact that the act revising title 12 contained the provision, in section 2 thereof, that ''This revision shall not affect the existence of any corporation heretofore formed.'' (Stats. 1931, ch. 871, p. 1858.)

While it would seem from the language used in section 605d that the provisions of title 12, as then adopted, were intended

to apply to nonprofit corporations thereafter formed, and under some circumstances to such corporations theretofore existing, it would also seem from the language used in that section, in the saving clause set forth in the act revising title 12, and in the express and definite provisions of section 279 in title 1, that it was not intended to interfere with nonprofit corporations which were then existing, in which certain definite property rights had been acquired, and with respect to which it was so definitely provided that their existence "shall not be affected." If it had been intended to affect the continued existence of such a corporation as that here in question, and to compel it to completely change its fundamental form and structure, with the resulting interference with accrued property rights, this should have been clearly and definitely stated by the Legislature, with a corresponding provision for the protection and disposal of the property rights theretofore existing. We think this would have been done had such an intention existed. In our opinion, therefore, the clear, definite and express provisions in title 1 prevailed here over the vague and indefinite provisions in title 12, and after the 1931 revision of the corporate laws the respondent corporation remained a stock corporation, although it contained nonprofit provisions and was operated for the benefit of its stockholders.

We think the same considerations apply with respect to the provisions of the Corporations Code, which was adopted in 1947. In that code, the General Corporation Law is set forth in division 1 of title 1, and the law with respect to nonprofit corporations is set forth in division 2 of that title. While the distinction between general corporations and nonprofit corporations is more clearly set forth in the Corporations Code than it was in the 1931 revision of the corporation laws, there is little difference between the two in the respect here in question. In the Nonprofit Corporation Law (tit. 1, div. 2) section 9002 makes the provisions of the General Corporation Law (tit. 1, div. 1) applicable to corporations formed under division 2 except as to matters specifically otherwise provided for therein. Section 9001 is a little more definite than the old section 605d of the Civil Code, and makes the provisions of the Nonprofit Corporation Law applicable to nonprofit corporations, whether then existing or thereafter formed, unless the corporation was expressly exempted from the operation thereof. However, the act adopting the Corporations Code (Stats. 1947, ch. 1038) provided among the general provisions that "no right accrued" before this code went into

effect ''is affected by the provisions of this code.'' Moreover, section 119 of the Corporations Code, which is in title 1, division 1 thereof, contains almost the exact language that was used in former section 279 of the Civil Code. We therefore hold that the existence of the respondent corporation, as theretofore formed and existing, was not affected by the adoption of the Corporations Code, or by the provisions of division 2 of title 1 thereof. It appears from the evidence that valuable property and assets were exchanged for most, if not all, of the stock of the respondent corporation. It would violate all due process of law to deprive the owners of that stock of their property rights therein without compensation, and to compel them to assume the status of mere members, in a different form and kind of corporation, with the same rights as those held by other members who had contributed little or nothing to the corporate assets. We think that this result is not compelled by our corporation laws, past or present, and that the trial court correctly found and held that the respondent corporation was organized and now exists under and pursuant to the provisions of the General Corporation Laws of this state; that it does not now come under the provisions of part 1, division 2 of title 1 of the Corporations Code; and that the voting power of this corporation rests with the record owners of the stock thereof, each shareholder being entitled to one vote for each share of stock held.

The judgment is affirmed.

Griffin, J., and Mussell, J., concurred.

A petition for a rehearing was denied January 11, 1950, and appellants' petition for a hearing by the Supreme Court was denied February 8, 1950. Carter, J., voted for a hearing.