CENTRAL CREDIT UNION OF MARYLAND *v.*
COMPTROLLER OF THE TREASURY

[No. 387, September Term, 1965.]

*Decided June 21, 1966.*

The cause was argued before PRESCOTT, C. J., HORNEY, MARBURY, OPPENHEIMER and McWILLIAMS, JJ.

*James R. Brown, III,* for appellant.

*Thomas P. Perkins, III, Assistant Attorney General,* and *Edward F. Engelbert, Chief, Retail Sales Tax Division,* with whom was *Thomas B. Finan, Attorney General,* on the brief, for appellee.

OPPENHEIMER, J., delivered the opinion of the Court.

The question in this case is whether sales of tangible personal property to a state chartered credit union are exempt from the imposition of the Maryland Retail Sales Tax. Central Credit Union of Maryland (Central) is a credit union organized under the laws of the State of Maryland whose membership consists solely of officers, directors, committeemen and employees of other federal and state chartered credit unions operating in the State. Central accepts deposits from its members and makes loans to them under the supervision of the State Bank Commissioner. All of its income in excess of its costs of operation is distributed to its members in the form of dividends.

Central purchased a check signer on February 20, 1964 from a Baltimore concern, paying $89 plus $5.34 federal excise tax and $2.67 state retail sales tax. Thereafter, Central filed a claim with the Comptroller of the Treasury for refund for the sales tax paid by it. A hearing was held on November 17, 1965. At this hearing the managing director of the Maryland Credit Union League, Inc., S. J. Dominic, testified that there was no substantial difference between the operations of a federal and a state chartered credit union. The hearing officer, on behalf of the Comptroller of the Treasury, denied Central's application and, on appeal to the Baltimore City Court, Judge Cullen affirmed the Comptroller's ruling.

Central contends that it is a non-profit organization and therefore exempt from the payment of retail sales tax pursuant to Code (1965 Repl. Vol.), Art. 81, Sec. 326, subsec. (i); that it is exempt from the payment of the tax under Code (1957), Art. 11, Sec. 159, which provides that state chartered credit unions shall be exempt from all taxation now or hereafter imposed by the State; that Laws of 1947, Ch. 281, Sec. 3, which provides that all laws inconsistent with the provisions of the

Retail Sales Tax Act are repealed to the extent of such inconsistencies, if relevant, is unconstitutional; and that the Retail Sales Tax Act is unconstitutional because it exempts federal credit unions from the payment of the sales tax and therefore discriminates against state chartered credit unions such as Central.

I

The Maryland Retail Sales Tax Act, Art. 81, Secs. 324-371, was originally enacted in 1947. Section 333 expressly provides that it shall be presumed that all sales of tangible and personal property and services set forth in the subtitle are subject to tax until the contrary is established. Section 326 entitled "Exemptions" states that the tax shall not apply to certain sales. Subsection (i) of this Section, which was in effect at the time of the sale here involved, provides as follows:

> "(i) *Sales to nonprofit, charitable, etc., organizations.*—Sales to any person operating a nonprofit religious, charitable, or educational institution or organization situated in this State when such tangible personal property is purchased for use in carrying on the work of such institution or organization; provided that the word 'person,' as used in this subsection shall not include the United States of America or any agency or instrumentality thereof."

Central properly does not contend that it is a religious, charitable or educational institution or organization. While we have given a liberal interpretation to the term "charitable" institution as used in the comparable exemption with respect to the collateral inheritance tax (see *Register of Wills v. Cook,* 241 Md. 264, 216 A. 2d 542 (1966)) there can be no doubt that a credit union which accepts deposits from its members, makes loans to them, and pays dividends to them, is not religious, charitable or educational in nature, even under the broadest concept of those terms. Central contends, however, that the subsection here involved applies to non-profit organizations even if they are not religious, charitable or educational.

We disagree with this contention. The structure of subsection (i) makes it evident to us that the word "non-profit" is

not meant to designate a separate category of exempt institutions but is only a restriction of the kinds of religious, charitable or educational institutions which are exempt. There is no comma after the word "non-profit." In case of doubt in the construction of a statute, punctuation can be used as an aid. *Webb v. Mayor & City Council of Baltimore*, 179 Md. 407, 410, 19 A. 2d 704 (1941) ; *Redmond v. State*, 155 Md. 13, 18, 141 Atl. 383 (1928).

Prior to 1963, the exemption covered sales to "non-profit" religious, charitable, scientific, literary or educational institutions and organizations. The present subsection was amended by Chapter 583 of the Laws of 1963. The title to that Act stated that the purpose of the amendment was to eliminate the exemption for sales to non-profit scientific, literary institutions. The amendment of itself demonstrates to us that the General Assembly intended the term "non-profit" to modify each of the other exempt classifications. In *John McShain, Inc. v. Comptroller*, 202 Md. 68, 72, 95 A. 2d 473 (1953), the question was whether the National Institute of Health was entitled to a claim for refund of sales and use taxes under the Retail Sales Tax Act. At the time of that decision the subsection applied to non-profit religious, charitable, scientific, literary or educational institutions or organizations. Judge Henderson, for the Court, said :

> "We think it is clear that the National Institute of Health, although an agency or arm of the Government, may fairly be described as 'operating a non-profit * * * charitable, scientific * * * or educational institution or organization situated in this State.' "

As Judge Markell said, for the Court, in *Comptroller of Treasury v. Crofton Co.*, 198 Md. 398, 404, 84 A. 2d 86 (1951) :

> "We must apply the familiar rules that an exemption from taxation must be strictly construed and to doubt is to deny the exemption."

The restrictive word "non-profit" as used in the subsection here considered is analogous to the more explicit restriction in the exemption from the collateral inheritance tax in Code (1965

Repl. Vol.), Art. 81, Sec. 150, which grants an exemption to religious, charitable, scientific, literary or educational institutions, "if no part of the net earnings of which enures to the benefit of any private shareholder or individual." See *Register of Wills v. Cook, supra.*

Even were the word "non-profit" held to apply to institutions other than those which are religious, charitable or educational in nature, Central could not qualify as a non-profit organization. Code (1957) Art. 11, Secs. 135-162 deal with credit unions. Section 155 expressly provides that: "The board of directors of a credit union may declare a dividend, not in excess of six per cent, from so much of its net profits at the close of any fiscal year as may be available after providing for expenses, interest and taxes accrued." Within this limitation, Central distributes its income to its members in the form of dividends. Such an organization, however beneficial to its members as to loans and the encouragement of savings, does not come within the concept of a non-profit organization. See *Shaker Medical Center Hosp. v. Blue Cross of Northeast Ohio,* 115 Ohio App. 497, 183 N. E. 2d 628 (1962) and *Pritchard v. Crestline Village Mut. Serv. Co.,* 95 Cal. App. 2d 151, 212 P. 2d 526 (1949).

## II

Central contends that in any event it is entitled to the exemption because of the provision of Code (1957), Art. 11, Sec. 159. This section reads as follows:

> "The credit unions organized under this article, their capital, reserves, surpluses and other funds, and their income shall be exempt from all taxation now or hereafter imposed by the State, or any county or municipality."

Central contends that under this provision the legislature intended to exempt state chartered credit unions from any and all taxes subsequent to 1943 when this section was enacted and that this exemption includes the Retail Sales Tax Act passed in 1947, four years later. It cites the established rule of statutory construction that statutes should be construed to effectuate the intention of the legislature and if the language is plain and

free of ambiguity and has a definite and sensible meaning, it is conclusively presumed to be the meaning of the legislature in enacting the statute. *Pineland Lumber Co. v. Miles,* 228 Md. 584, 587-88, 180 A. 2d 870 (1962) and cases therein cited.

Chapter 337, Section 24 of the Laws of 1929, the original precursor of Section 159 of Article 11, provided that a credit union "shall not be subject to taxation, except as to real estate owned. The shares of a credit union shall not be subject to any stock transfer tax * * *"

The title of Chapter 785 of the Laws of 1943, which enacted the present form of Section 159, reads as follows:

> "AN ACT to repeal and re-enact with amendments Section 149 of Article 11 of the Annotated Code of Maryland (1939 Edition), title 'Banks and Trust Companies', sub-title 'Credit Unions', and to add a new section to Article 81 of said Code, title 'Revenue and Taxes', sub-title 'What shall be taxes and where', said new section to be known as Section 7(30) and to follow immediately after Section 7(29) of said Article, exempting capital, other funds, income and the shares of Credit Unions from taxation and substituting a direct tax upon their real and tangible personal property."

The title of an act can be used in conjunction with the body of the act to determine the intent, purpose and effect of an amending statute. *Gibson v. State,* 204 Md. 423, 430, 437, 104 A. 2d 800 (1954) ; *Miggins v. Mallott,* 169 Md. 435, 440, 182 Atl. 333 (1936). The title of the 1943 Act states that the new section therein enacted is to exempt capital, other funds, income and the shares of credit unions from taxation and to substitute a direct tax upon their real and personal property. Under the terms of Article 81, as amended, the only express exemption as to credit unions is "shares of stock in credit unions." The taxability of real and personal property of credit unions, according to the terms of Article 81, is not affected. Despite the broad language of the 1943 amendment, the history of the legislation as to credit unions might be construed to indicate that it has always been the legislative intent to subject their real and

tangible personal property to the same taxation to which individuals and other institutions are subject, and to exempt only the shares of stock in credit unions.

The only question of statutory construction now being considered, however, is whether the terms of the 1943 enactment exempt credit unions from payment of the retail sales tax, enacted four years later. We find that Section 159 of Article 11 is not to be so construed.

*Pittman v. Housing Authority*, 180 Md. 457, 459, 25 A. 2d 466 (1942), was decided on April 8, 1942, a year before the enactment of the 1943 amendment of Section 159. The question in *Pittman* was whether the Housing Authority of Baltimore City is exempt from the State Recordation Tax Acts. Under the Maryland Housing Authority Law of 1937, which created Housing Authorities subject to the approval of the governing bodies of the cities, it was provided that an authority "shall be exempt from all taxes and special assessments of the city, the State or any political subdivision thereof," provided that the authority shall pay to the city in lieu of taxes a sum for each housing project not exceeding an amount equal to the regular taxes levied upon similar property. The United States Housing Authority and the City of Baltimore made annual contributions for the housing projects. The Recordation Tax Act was passed in the 1937 Special Session of the General Assembly, after the regular session at which the Housing Authority Law had been passed. The Housing Authority paid the recordation tax on a deed to it under protest. The Authority filed a petition in the Baltimore City Court for mandamus to compel the Clerk of the Superior Court of Baltimore City to record the deed without the payment of the recordation tax. The lower court granted mandamus, but on appeal, this Court reversed. Judge Delaplaine, for the Court, referred to the firmly established principle that exemptions from taxation are not favored, but are strictly construed in favor of the State. He stated, 180 Md. at 462-63, that "[a] tax imposed upon the recording of a deed, even though computable on the amount of the consideration, is not a tax on property, but a privilege tax imposed upon the privilege of recording the deed." He referred to the fact that when the legislature passed the Housing Authority

Law, there was no recordation tax in the State, and held that the recordation tax, which made no exception in its terms in favor of state, county or municipal agencies, was not within the scope of the exemption granted to the Authority.

Like a tax on the recording of deeds, the retail sales tax is imposed upon the occurrence of an event, a purchase. It differs in nature from a gross receipts or occupational type of tax. The tax is imposed upon the purchaser, upon the act of selling. *Comptroller v. Kaiser Aluminum & Chemical Corp.*, 223 Md. 384, 389, 164 A. 2d 886 (1960). See also *Frank J. Klein & Sons, Inc. v. Comptroller*, 233 Md. 490, 494-95, 197 A. 2d 243 (1964) and *McGoldrick v. Berwind-White Coal Mining Co.*, 309 U. S. 33, 49 (1940). On the reasoning in *Pittman*, the sales tax does not come within the intent or scope of the exemption of Section 159.

Courts in other states have reached the same conclusion. *Celina Mut. Ins. Co. v. Bowers*, 5 Ohio St. 2d 12, 213 N. E. 2d 175 (1965), held that a Retail Sales Act covered sales made to an insurance company, despite an earlier enactment that a tax on domestic insurance companies was to be "in lieu of all other taxes, charges and excises on such domestic insurance companies." In *Oxford v. Housing Authority*, 104 Ga. App. 797, 123 S. E. 2d 175 (1961), a 1937 law provided that the property of the Authority "shall be exempt from all taxes, and special assessments of the city, the county, the state or any political subdivision thereof." Georgia enacted a sales and use tax in 1951, which did not exclude the Authority from its coverage. It was held the Authority was subject to the tax. In *Y.M.C.A. v. State*, 265 Ala. 640, 93 So. 2d 781 (1957), the Y.M.C.A. had been given a statutory exemption from all taxes "of any nature whatever." It was held that the exemption did not encompass a use tax. To the same effect are earlier cases cited in Annot. *Sale or use tax as within tax exemption provisions of statutes other than those imposing such taxes*, 1 A.L.R.2d 465 (1948).

In *Federal Land Bank v. Bismarck Lumber Co.*, 314 U. S. 95 (1941), the Supreme Court held that under the Federal Farm Loan Act of 1916, which provided that "every Federal land bank * * * shall be exempt from Federal, State, muni-

cipal and local taxation," a Federal land bank was not subject to the North Dakota Sales Tax Act. That case involved Congressional protection of an instrumentality of the federal government within the framework of our federal system under which Congressional action to support such instrumentalities is binding upon the states. The interpretation of a state exemption to a domestic institution is not subject to such inherent constitutional considerations.

Central attempts to distinguish the state cases on the ground that the exemption in Section 159 is as to "all taxation now or hereafter imposed", whereas in the decisions to which we have referred the words "or hereafter" did not appear. We find the attempted distinction unsound. All the state exempting statutes involved in the decisions obviously looked to the future as well as to the present insofar as taxability was concerned. It is the nature of the imposition of the sales tax which we find not to have been encompassed in the exemption of Section 159. The fact that the sales tax was enacted after the 1943 exemption only emphasizes that a tax of this nature, imposed not on property but on an event, was not contemplated within the scope of the exemption.

In view of our holding on the construction of Section 159, we do not reach the question of the construction or constitutionality of Laws of Maryland 1947, Chap. 281, Sec. 3, in respect to the repeal of all laws inconsistent with the Retail Sales Tax Act.

III

Central contends that the Retail Sales Tax Act, as applied to it, is discriminatory and unconstitutional because federal chartered credit unions have been exempted from the payment of the tax. If a state chartered credit union must pay the tax, Central contends Article 15 of the Maryland Declaration of Rights and the equal protection clause of the Fourteenth Amendment to the United States Constitution have been violated.

Subsection (f) of Art. 81, Sec. 326, (one of the 28 subsections setting forth the sales to which the Retail Sales Tax Act does not apply) reads as follows: *"Tax prohibited by United States Constitution.*—Sales which are not within the taxing

power of this State under the Constitution of the United States." In the case of *Tabco Federal Credit Union v. Comptroller,* in the Circuit Court of Baltimore County, Misc. Docket 7, Folio 293, File No. 2836, C.C.H. 2 Md. Tax Cases, ¶200-411 (1964), Judge Barrett, in an able and comprehensive opinion, held that Tabco, an institution organized under the Federal Credit Union Act (12 U.S.C.A., §§ 1751-1775), was a federal instrumentality enjoying implied constitutional immunity from taxation by the states, and that Congress, under Section 23 of the Act, 12 U.S.C. 1758, had forbidden the application of a statute such as the Maryland Retail Sales Tax Act to purchases of equipment and tangible personal property by Tabco. No appeal was taken from this decision; its effect, therefore, for present purposes, is the same as though an exemption from the Sales Tax Act had been expressly granted by the terms of the Act.

But the exemption of federal credit unions from the Act does not make the application of the Act to state chartered credit unions a violation of the equal protection clauses of the Fourteenth Amendment or the Maryland Declaration of Rights, even though federal and state chartered unions, in purpose and operation, are essentially similar. If, as Judge Barrett held, taxation of the federal credit unions is not within the taxing power of Maryland, it does not follow that state chartered unions cannot be constitutionally taxed. The exemption is the result of the supremacy of the federal government. *M'Culloch v. Maryland,* 17 U. S. (4 Wheat.) 316 (1819). States have no power to tax federal instrumentalities even under non-discriminatory state taxation. *Weston v. City Council of Charleston,* 27 U. S. (2 Pet.) 449 (1829); *Dobbins v. Commissioners of Erie County,* 41 U. S. (16 Pet.) 435 (1842); *Helvering v. Gerhardt,* 304 U. S. 405, 411-13 (1938). The exemption to the federal instrumentality is a limitation imposed by the federal Constitution to prevent the impeding of the operation of the national government; it is not a limitation upon the proper exercise of state authority over state institutions.

Even if the exemption to the federal credit unions is based only upon a fear of federal constitutional restrictions, the result is the same. Differentiation in the application of a state statute based upon a reasonable apprehension of unconstitu-

tionality if the tax were applied without the differentiation is a reasonable exercise of the legislative discretion. *Carmichael v. Southern Coal & Coke Co.,* 301 U. S. 495, 513 (1937) ; *Murray v. Comptroller of the Treasury,* 241 Md. 383, 402, 216 A. 2d 897 (1966). As Mr. Justice Brandeis observed in *Packer Corp v. Utah,* 285 U. S. 105, 109 (1932) : "Action by a State taken to observe one prohibition of the Constitution does not entail the violation of another."

*Judgment affirmed; costs to be paid by appellant.*